**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE COMPASS DIVERSIFIED HOLDINGS SECURITIES LITIGATION | Civil No. 3:25-cv-00758 (AWT) |

**CODI DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
<u>**MOTION TO DISMISS AMENDED COMPLAINT**</u>

SQUIRE PATTON BOGGS (US) LLP

Joseph C. Weinstein (admitted *pro hac vice*)
joe.weinstein@squirepb.com
Sean L. McGrane (admitted *pro hac vice*)
sean.mcgrane@squirepb.com
1000 Key Tower
127 Public Square
Cleveland, OH 44114
Telephone: (216)-479-8500
Fax: (216)-479-8780

Elizabeth F. Ahlstrand
elizabeth.ahlstrand@squirepb.com
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
Telephone: (212)-872-9887
Fax: (212)-872-9815

*Counsel for Defendants Compass Diversified Holdings, Compass Group Diversified Holdings LLC, Elias Sabo, Ryan J. Faulkingham, Stephen Keller, and Patrick J. Maciariello*

**TABLE OF CONTENTS**

<u>**Page**</u>

I.    Preliminary Statement.................................................................................................... 1

II.   Factual Summary & Procedural Background ................................................................ 4

    A.   The parties to this action. ................................................................................... 4

    B.   CODI acquires controlling a stake in Lugano.................................................... 6

    C.   Moti operated Lugano fraudulently. ................................................................. 7

    D.   CODI discovers and discloses the fraud, and restates its financials. ................ 9

    E.   Procedural background. ................................................................................... 11

III.   Law and Argument: As the AC Fails to Plead Scienter, the Motion to Dismiss Should be Granted........................................................................................................................ 12

    A.   The PSLRA's heightened pleading requirements............................................. 12

    B.   Plaintiff fails to adequately plead scienter. ...................................................... 13

        1.   Plaintiff does not plead motive and opportunity............................................. 13

        2.   The AC does not contain particularized factual allegations showing scienter through conscious misbehavior or recklessness. ............................................. 18

    C.   The AC suffers from additional pleading deficiencies. .................................... 35

    D.   The more compelling inference is nonfraudulent. ............................................ 37

    E.   The Section 20(a) claim should be dismissed................................................... 38

    F.   The Court should dismiss the AC with prejudice. ............................................ 39

IV.   Conclusion .................................................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AppHarvest*,
    684 F. Supp. 3d 201 (S.D.N.Y. 2023)....................................................................................26

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) ................................................................................12, 13, 14

*In re Bausch & Lomb, Inc. Sec. Litig.*,
    592 F. Supp. 2d 323 (W.D.N.Y. 2008)............................................................................30, 35

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
    658 F. Supp. 3d 220 (S.D.N.Y. 2023)..............................................................................3, 19

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir.1996)....................................................................................................30

*In re Dentsply Sirona, Inc. Securities Litig.*,
    2026 WL 124581 (S.D.N.Y. 2026)........................................................................................39

*In re DraftKings Inc. Sec. Litig.*,
    650 F. Supp. 3d 120 (S.D.N.Y. 2023)....................................................................................39

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)....................................................................................2, 13, 14, 18

*Eden Alpha CI LLP v. Polished.com Inc.*,
    763 F. Supp. 3d 270 (E.D.N.Y. 2025) ..............................................................................27, 33

*First New York Sec., L.L.C. v. United Rentals, Inc.*,
    648 F. Supp. 2d 256 (D. Conn. 2009).........................................................................20, 21, 23

*Fogel v. Wal-Mart de Mexico SAB de CV*,
    No. 13 CIV. 2282, 2017 WL 751155 (S.D.N.Y. Feb. 27, 2017), *aff'd sub nom.*
    *Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018)..................................................................25, 39

*Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017)....................................................................................25

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)............................................................................ *passim*

*Greco v. Qudian Inc.*,
    No. 1:20-CV-577-GHW, 2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022) ...............................15

*Hills v. BioXcel Therapeutics, Inc.*,
   No. 3:23-CV-00915, 2024 WL 3374145 (D. Conn. July 11, 2024) ........................................14

*In re Iconix Brand Grp., Inc.*,
   No. 15-cv-04860-PGG, 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017) ...................................19

*Kempen International Funds v. Syneos Health, Inc.*,
   No. 23-cv-08848, 2025 WL 949576 (S.D.N.Y. March 28, 2025) ...........................................36

*In re LaBranche Sec. Litig.*,
   405 F. Supp. 2d 333 (S.D.N.Y. 2005)....................................................................................38

*Lawson v. FMR LLC*,
   571 U.S. 429 (2014)................................................................................................................24

*Levinson v. PSCC Servs., Inc.*,
   No. 3:09-CV-00269 PCD, 2009 WL 5184363 (D. Conn. Dec. 23, 2009)...............................12

*In re Lihua Int'l, Inc. Sec. Litig.*,
   No. 14-cv-05037-RA, 2016 WL 1312104 (S.D.N.Y. Mar. 31, 2016)....................................38

*In re Lottery.com, Inc. Sec. Litig.*,
   715 F. Supp. 3d 506 (S.D.N.Y. 2024)....................................................................................31

*Lugano Diamonds & Jewelry Inc. v. Mordechai Ferder*,
   No. 30-2025-01492210-CU-CO-CJC (Cal. Sup. Ct., Cnty. Orange Nov. 26,
   2025) ......................................................................................................................................8, 9

*Malin v. XL Cap. Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007)........................................................................12, 14, 26

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
   518 F. Supp. 3d 772 (S.D.N.Y. 2021).....................................................................................27

*McIntire v. China MediaExpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y. 2013).....................................................................................34

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
   No. 19-cv-07536-NRB, 2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) .................................34

*N.Y.C. Pub. Pension Funds v. Coupang, Inc.*,
   No. 22-cv-07309-VSB, 2025 WL 2613650 (S.D.N.Y. Sept. 10, 2025) .................................30

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).....................................................................................................20

*Patel v. L-3 Commc'ns Holdings Inc.*,
   14-CV-60382016, 2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016) ...............................23, 24, 25

*In re Piedmont Lithium Inc. Sec. Litig.*,
    712 F. Supp. 3d 301 (E.D.N.Y. 2024) ...........................................................30, 32

*Puchtler v. Barclays PLC*,
    2025 WL 3495490 (2d Cir. 2025)....................................................................19, 20

*In re PXRE Grp., Ltd., Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y.), *aff'd*, 357 F.App'x 393 (2d Cir. 2009) ................................31

*S. Cherry St., LLC v. Hennessee Grp., Ltd.*,
    573 F.3d 98 (2d Cir.2009)...............................................................................12, 19

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016)....................................................................22

*Saraf v. Ebix, Inc.*,
    No. 23-cv-1182, 2024 WL 1298246 (2d Cir. March 27, 2024)....................................2

*Schaffer v. Horizon Pharma PLC*,
    No. 16-cv-01763-JMF, 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ....................................25

*Schiro v. Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019)..........................................................25, 27, 29

*Singh v. Cigna Corp.*,
    277 F. Supp. 3d 291 (D. Conn. 2017), *aff'd,* 918 F.3d 57 (2d Cir. 2019)..................2, 3, 17, 18

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010)....................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................4, 37

*In re The Hain Celestial Grp. Inc. Sec. Litig.*,
    No. 2:16-cv-04581-ADS-SIL, 2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019)........................28

*Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers'*
    *& Firefighters' Ret. Plan*,
    No. 21-909-CV, 2021 WL 5142702 (2d Cir. Nov. 5, 2021)....................................34

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022)..............................................................26, 31

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    No. 13-cv-08846-LGS, 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ....................31, 32, 35

*In re Veon Ltd. Sec. Litig.*,
    No. 15-cv-08672-ALC, 2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) ................................23

*Woolgar v. Kingstone Companies, Inc.*,
　　477 F. Supp. 3d 193 (S.D.N.Y. 2020)....................................................................20, 21, 25, 33

*In re World Wrestling Entertainment, Inc. Sec. Litig.*,
　　180 F. Supp. 3d 157 (D. Conn. 2016) (Thompson, J.)..................................................... *passim*

**Statutes**

15 U.S.C. §78t-1(a) ...........................................................................................................................38

15 U.S.C. § 78u-4(1)-(2) ..................................................................................................................12

15 U.S.C. § 78u-4(b)(2) ..............................................................................................................12, 36

Exchange Act Section 20(a)...................................................................................................11, 38, 39

Private Securities Litigation Reform Act of 1995 ("PSLRA")............................................... *passim*

Securities Exchange Act of 1934 Section 10(b) .......................................................................11, 12, 38, 39

**Other Authorities**

Rule 10b-5....................................................................................................................11, 12, 13, 30

Defendants Compass Diversified Holdings, Compass Group Diversified Holdings LLC (with Compass Diversified Holdings, "CODI" or the "Company"), Elias Sabo, Ryan J. Faulkingham, Stephen Keller, and Patrick J. Maciariello (collectively the "Individual Defendants," and with CODI, the "CODI Defendants"), by and through their undersigned counsel, hereby respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint (the "AC").

## I.    PRELIMINARY STATEMENT

This case involves the fallout from a pervasive, systemic fraud perpetrated on CODI, its officers, its directors, its auditors, and its shareholders by Mordechai Ferder (aka "Moti"), the founder and CEO of CODI's majority-owned subsidiary, Lugano Diamonds & Jewelry Inc. ("Lugano").  Far from securities fraud, the allegedly false statements and omissions by the CODI Defendants were the product of their having been defrauded themselves by Moti.  The CODI Defendants spoke what they believed to have been true and were personally harmed by the fraud itself and the subsequent decline in the Company's stock price when the fraud came to light.

Lead plaintiff Eastern Atlantic States Carpenters Pension Fund and Eastern Atlantic States Carpenters Annuity Fund (collectively "EAS Carpenters" or "Plaintiff") now attempts to transform Moti's fraud into a securities fraud case against the CODI Defendants.  But, not surprisingly, Plaintiff fails to adequately plead the scienter necessary to state a claim under the rigorous standards imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  CODI and the Individual Defendants were neither intentionally fraudulent nor reckless in making their statements—and Plaintiff does not and cannot plead otherwise.

Specifically, Plaintiff has not sufficiently pleaded that the CODI Defendants—not Moti, but the CODI Defendants—acted with scienter (i.e., the "intent to deceive, manipulate or defraud") when making statements to the market regarding CODI's financial performance. *See In re World*

*Wrestling Entertainment, Inc. Sec. Litig.*, 180 F. Supp. 3d 157, 185 (D. Conn. 2016) (Thompson, J.).  "To meet the scienter requirement in a 10b-5 action under the PSLRA, a plaintiff must '**state with particularity** facts giving rise to a **strong inference** that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. §78u-4(b)(2)(A)) (emphasis added).  In the Second Circuit, this strong inference can only be established by pleading particularized facts "to show either (1) that the defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*  And here, notwithstanding its length, the AC does not contain any particularized facts showing that the CODI Defendants (1) had either motive and opportunity to commit fraud or (2) consciously misbehaved or acted recklessly when speaking to the market.

- **No Motive and Opportunity**: "In order to raise a strong inference of scienter through motive and opportunity to defraud, plaintiff must allege that the defendant corporation or its officers benefitted in some concrete and personal way from the purported fraud."  *Saraf v. Ebix, Inc.,* No. 23-cv-1182, 2024 WL 1298246, at *2 (2d Cir. March 27, 2024); *see also Singh v. Cigna Corp.*, 277 F. Supp. 3d 291, 317 (D. Conn. 2017), *aff'd,* 918 F.3d 57 (2d Cir. 2019) (same).  The quintessential way to plead motive and opportunity in the Second Circuit is to allege that a defendant sold his or her stock at opportune or suspicious times during the class period—usually, when the stock price is high, before the alleged fraud is disclosed to the rest of the market and the stock price goes down.  *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009) ("[T]he motive showing is generally met when corporate insiders allegedly make a misrepresentation to sell their own shares at a profit.").  Here, there is not a single allegation in the 262-page complaint that any Individual Defendant sold any stock in CODI at any time during the proposed class period from February 24, 2022, through December 4,

2025, inclusive (the "Class Period"). The CODI Defendants therefore suffered at least the same losses from Moti's fraud as the rest of CODI's stockholders. Moreover, the AC alleges that certain of the CODI Defendants, through their interests in an entity called Sostratus LLC, actually stood to receive a significant financial windfall if Moti's fraud had remained hidden into 2026, instead of being disclosed by CODI in May 2025. That these Defendants acted against their financial interests in disclosing Moti's fraud further undercuts any inference of "motive and opportunity." At best, Plaintiff alleges that certain Individual Defendants' compensation increased as Lugano and CODI's profits also increased—an allegation that is "common to most corporate officers" and does "not constitute motive for purposes of [the scienter] inquiry." *In re WWE*, 180 F. Supp. 3d at 187 (quoting *ECA, Local 134*, 553 F.3d at 198). Plaintiff has accordingly failed to plead motive and opportunity.

- **No Conscious Misbehavior or Recklessness**: Plaintiff has also failed to plead scienter through particularized allegations showing conscious misbehavior or recklessness by any of the CODI Defendants. In order to plead conscious misbehavior, Plaintiff must sufficiently allege actual intent. *See In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 230 (S.D.N.Y. 2023). To plead recklessness, Plaintiff must allege "a state of mind approximating actual intent, and not merely a form of heightened negligence." *In re WWE*, 180 F. Supp. 3d at 187 (quoting *S. Cherry St., LLC v. Hennessee Grp., Ltd.*, 573 F.3d 98, 109 (2d Cir.2009)). Recklessness requires factual allegations showing conduct "which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it". *Singh*, 277 F. Supp. 3d at 320 (quoting *S. Cherry Street, LLC*, 573 F.3d at 109). The AC does not meet these standards: There are no allegations in the AC that the CODI Defendants

actually knew about the fraud at Lugano; no allegations that the Individual Defendants received and disregarded contemporaneous reports or documents showing them that their statements were false or misleading; and no other particularized factual allegations showing that the CODI Defendants acted recklessly or with the actual intent to defraud. To the contrary, the AC is chock-full of allegations showing that Moti not only actively concealed his fraud from CODI and the Individual Defendants, but also from CODI's independent auditors at Grant Thornton, who opined that CODI maintained effective internal controls and that CODI's consolidated financial statements fairly presented, in all material respects, the financial condition of the Company in accordance with GAAP in each of the years preceding the discovery and disclosure of Moti's fraud (2022, 2023 and 2024).

In sum, Plaintiff has failed to plead scienter. As the Supreme Court of the United States has held, in order to survive dismissal, the inference of scienter must be "strong" and "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, the more compelling inference to be drawn from the AC is that the CODI Defendants did not intentionally defraud the market, but instead were themselves deceived by Moti into (i) believing that Lugano's growth was natural; (ii) providing hundreds of millions of dollars of capital to Lugano to drive that growth; and (iii) incorrectly—but not fraudulently—reporting Lugano's impact on CODI's financial statements to the market, only to be restated and corrected once CODI discovered the fraud.

For these reasons, and those stated more fully herein, the CODI Defendants respectfully request that the AC be dismissed, in its entirety and with prejudice.

## II.    FACTUAL SUMMARY & PROCEDURAL BACKGROUND

### A.    The parties to this action.

Defendant Compass Diversified Holdings is a Delaware statutory trust. *See* AC ¶ 25. Defendant Compass Group Diversified Holdings LLC is a Delaware limited liability company. *Id.* Compass Diversified Holdings and Compass Diversified Holdings LLC are collectively referred to herein, and in the AC, as "Compass," "CODI" or the "Company." *Id.* at 1. Shares of CODI are traded on the New York Stock Exchange under the ticker "CODI." *Id.* ¶ 45(f).

CODI was formed to acquire and manage small and middle-market businesses headquartered in North America. *Id.* ¶ 57. More specifically, CODI's business centers on acquiring controlling interests in private companies that become subsidiaries within the broader CODI corporate family. *Id.* ¶ 59. CODI helps its subsidiaries grow not only by providing management services, but by offering quick and direct access to capital. *Id.* As alleged in the AC, "Compass differentiates itself . . . by providing both debt and equity capital for its subsidiaries. This model supports the subsidiaries' financial stability and operating flexibility, while also allowing Compass to invest subsidiaries' cash flow in the Company's long-term growth." *Id.* As of the date of the filing of the AC, CODI owned eight separate subsidiaries (excluding Lugano) primarily in the branded-consumer and industrial sectors. *Id.* ¶ 58.

There are four "Individual Defendants" named in the AC. Defendant Elias Sabo is alleged to be, at all relevant times during the putative Class Period, the Chief Executive Officer of CODI. *Id.* ¶ 29. He is also alleged to be a CODI director. *Id.* Defendant Ryan Faulkingham is alleged to have served as the Chief Financial Officer of CODI until August 30, 2024. *Id.* ¶ 30. Defendant Stephen Keller is alleged to have succeeded Mr. Faulkingham as the Chief Financial Officer of CODI on August 31, 2024, and is alleged to continue to serve in that position. *Id.* ¶ 31. Defendant Patrick Maciariello is alleged to have served as the Chief Operating Officer of CODI throughout the putative Class Period. *Id.* ¶ 32.

Defendant Grant Thornton LLP ("Grant Thornton") is an accounting firm based in Chicago that serves as CODI's independent auditor.  *See id.* ¶ 34.  Grant Thornton is separately filing a motion to dismiss the claims asserted against it, and those claims are not addressed herein.

EAS Carpenters was appointed as lead plaintiff in this action by order dated July 21, 2025, pursuant to the applicable provisions of the PSLRA.  *See* ECF No. 50.  EAS Carpenters filed the operative AC on February 6, 2026.

### B.      CODI acquires controlling a stake in Lugano.

Non-party Lugano Diamonds was founded in 2004 by Moti Ferder, who "immigrated from Israel to Orange County, California" shortly after its founding.  AC ¶ 70; *see also id.* ¶ 2.  Lugano was founded as a manufacturer and seller of high-end jewelry.  *Id.*  Lugano opened its first location in Newport Beach, California, in 2005.  *Id.* ¶ 74.  As alleged in the AC, after its founding in 2004:

> Lugano quickly grew, thanks in part to the understated, elegant jewelry pieces Moti designed and sold.  But what set Lugano apart from peer competitors was Moti's unique marketing strategy.  Moti and his wife, Lugano's COO Idit [], together ingratiated themselves with the Southern California business community by donating to and participating in local philanthropies.  The Ferders also sponsored charity galas where Lugano jewelry was showcased for the gala's affluent attendees and events on the international equestrian circuit, both potential sources of high-value customers.  Leveraging their personal relationships the Ferders formed through those engagements, Lugano positioned itself as a premier purveyor of luxury jewelry for millionaires and billionaires, with its jewelry selling for an average of $115,000 per piece in 2021.  Lugano was also known for its intimate retail locations, which Lugano referred to as salons rather than stores or boutiques …. The layout of these salons further cultivated Lugano's air of exclusivity, with the Ferders seeking out—and often forging—personal relationships with their upper-class clientele.

*Id.* ¶¶ 70-71.  By 2021, the Ferders had established four Lugano salons in the United States: in Newport Beach, Aspen, Palm Beach and Houston, as well as a "pop-up boutique operating out of different stops on the equestrian circuit." *Id.* ¶ 74.

In September 2021, after conducting due diligence, CODI acquired a 60% interest in Lugano for $265.1 million. *Id.* ¶ 69.  Following the acquisition, Lugano operated as a subsidiary

of CODI, and Moti and his wife continued to run Lugano as CEO and COO, respectively. *Id.* ¶ 78. In the years that followed the acquisition, and consistent with its model for funding its subsidiaries, CODI provided hundreds of millions of dollars to Lugano to facilitate its growth. *Id.* ¶ 82; *see also id.* ¶ 6 (alleging that CODI "fork[ed] over hundreds of millions of dollars to fund Lugano's purported expansion").

As a public company, CODI was required to (and did) make quarterly and annual disclosures with the Securities and Exchange Commission (the "SEC")—and to the investing public—regarding its financial performance. In 2022, 2023 and 2024, CODI's consolidated financial statements in its SEC filings showed significant revenue growth, attributable in part to Lugano's growth. In each of the years following the acquisition of Lugano (2021-2024), CODI's independent auditors at Grant Thornton opined that CODI maintained effective internal controls and that its consolidated financial statements fairly presented, in all material respects, the financial condition of the Company in accordance with GAAP. *Id.* ¶ 7.

### C.    Moti operated Lugano fraudulently.

Unbeknownst to CODI, to the Individual Defendants, and to CODI's independent auditors at Grant Thornton, Moti operated the Lugano subsidiary in a fraudulent manner both prior to and after the CODI acquisition. As alleged in the AC with the benefit of hindsight, Lugano was a "hotbed of financial irregularities, where Moti and other employees manipulated or outright disregarded accounting principles and standards to create the appearance of rapid, continuing growth combined with remarkable profitability." *Id.* ¶ 9.

"At the heart" of Moti's "culture of financial irregularities" was the use of so-called "investment diamond transactions," the origins of which predated CODI's acquisition and which were kept hidden from CODI following the acquisition. *Id.* ¶¶ 10, 101. In these transactions, Moti would "solicit an investor—typically, a preexisting Lugano client—to contribute funds to the

purchase of a diamond for Lugano to resell or to turn into jewelry." *Id.* ¶ 101.  The contract between Lugano and the investor typically gave the investor the option to receive its full investment amount back, plus interest; accordingly, the funds contributed by the investor should have been recorded as a debt liability of Lugano. *Id.* ¶ 154, 157.  Instead, Moti either did not report the transaction at all or caused the money to be reported as revenues "without acknowledging Lugano's obligation to repay the investor, thereby inflating Lugano's apparent revenues and operating income as well as obscuring the extent of Lugano's debt." *Id.* ¶ 10.  Moti would sometimes "use the funds contributed by a client in one investment diamond transaction to repay a different client's investment in a separate investment diamond transaction"—akin to a "classic Ponzi scheme." *Id.* ¶ 167.  Further, Moti also misstated or inflated the value or existence of Lugano's diamond inventory. *Id.* ¶ 107.

There are no allegations in the AC that the CODI Defendants knew about, or participated in, the fraudulent conduct at Lugano.  Rather, as the AC and documents cited therein demonstrate, Moti went to great lengths to conceal these practices from CODI and from all but his closest relatives.  Indeed, Plaintiff alleges that Moti, *inter alia*:

- "forged invoices and other documentation purporting to evidence arms-length transactions;" *Id.* ¶ 155 (quoting Am. Compl. ¶ 20, *Lugano Diamonds & Jewelry Inc. v. Mordechai Ferder*, No. 30-2025-01492210-CU-CO-CJC (Cal. Sup. Ct., Cnty. Orange Nov. 26, 2025);

- "took exceptional actions to ignore or override the controls designed by CODI management" and "revenue recognition policies;" *Id.* ¶ 299 (quoting Compass Div. Hold., Annual Report (Form 10-K/A) (Dec. 8, 2025));

- "manipulated Lugano's sales records to 'zero[] out [Lugano's] accounts with [certain customers] on a yearly basis;'" *Id.* ¶ 293 (quoting Compl. ¶ 28, *Champion Force Indus. Ltd. v. Lugano Diamonds & Jewelry Inc.*, No. 30-2025-01499613-CU-BC-CJC (Cal. Super. Ct. Cnty. Orange July 24, 2025), ROA No. 2);

- "concealed [] outgoing repayments to [] third parties as payments to vendors;" *Id.* ¶ 155 (quoting Am. Compl. ¶ 22, *Lugano Diamonds & Jewelry Inc. v. Mordechai Ferder*, No. 30-2025-01492210-CU-CO-CJC (Cal. Sup. Ct., Cnty. Orange Nov. 26, 2025);

- "[a]rranged for empty boxes to be shipped to addresses across the United States . . . so that he could point to shipping records as false proof that the transactions had been fulfilled;" *Id.* ¶ 155 (quoting Am. Compl. ¶ 20, *Lugano Diamonds & Jewelry Inc. v. Mordechai Ferder*, No. 30-2025-01492210-CU-CO-CJC (Cal. Sup. Ct., Cnty. Orange Nov. 26, 2025);

- fired a Lugano employee in 2024 who was preparing to investigate, and provide documentation to CODI about, a specific investment transaction, before he could do so; *Id.* ¶ 166;

- falsified "photos and Gemological Institute of America ("GIA") paperwork ostensibly substantiating the diamond's existence;" *Id.* ¶ 167; and

- misappropriated company funds through "suspicious transfers" to entities such as the Israeli Defense Force by recording them as "owner draws." *Id.* ¶ 110.

### D.    CODI discovers and discloses the fraud, and restates its financials.

Notwithstanding Moti's efforts, CODI eventually discovered and disclosed the fraud. Specifically, on May 7, 2025, CODI filed a Form 8-K with the SEC. In that filing, CODI disclosed as follows:

> In April 2025, the Audit Committee of the Board of Directors of CODI commenced an internal investigation into the financing, accounting and inventory practices of Lugano based on concerns reported to Company management as to these practices. … The investigation, which remains ongoing, focuses on certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by Lugano…. The Audit Committee is working diligently with its Advisors to complete this investigation as soon as possible.

*See* Compass Div. Hold., Current Report (Form 8-K) (May 7, 2025), https://www.sec.gov/Archives/edgar/data/1345126/000134512625000021/codi-20250507.htm, ("May 7, 2025 Form 8-K"); *see also* AC ¶ 267 (quoting May 7, 2025 Form 8-K).[1]  CODI further disclosed that in light of its investigation into Lugano, its 2024 financial statements would be restated and should no longer be relied upon.  *Id.*  CODI also warned that "a restatement of financial statements for fiscal years ending prior to January 1, 2024, may also be required."  May 7, 2025 Form 8-K.  Moti resigned effective immediately the same day, without severance.  *Id.* ¶ 269.  CODI's stock price dropped from $17.25/share to $6.55/share.  *Id.* ¶ 270.

CODI made a number of additional disclosures throughout 2025, as its Audit Committee conducted and eventually concluded its investigation into Moti and Lugano.  On June 18, 2025, CODI filed an 8-K with the SEC stating that its financial statements for 2022 and 2023 also would be restated and should not be relied upon.  *See* Compass Div. Hold., Current Report (Form 8-K) (June 18, 2025), https://www.sec.gov/Archives/edgar/data/1345126/000134512625000038/codi-20250618.htm.  CODI ultimately filed its restated financials for the years ending 2022, 2023 and 2024 on December 8, 2025.  Among other things, CODI in the restated financials adjusted Lugano's revenues downward by approximately 85%, "following the removal of the fraudulent revenue;" CODI also reduced its consolidated inventory by approximately $375 million.  AC ¶

---

[1] "On a motion to dismiss, the Court may properly consider documents referenced in or integral to the complaint, as well as public filings with the SEC." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 585 (S.D.N.Y. 2011).

278.  In an investor call preceding the issuance of the restated financials, CODI acknowledged that its Audit Committee had discovered a "deliberate and systemic fraud.  The former Lugano CEO engaged in a scheme to significantly overstate Lugano's sales and profits, misrepresent the existence and value of Lugano's inventory, and keep potential financial liabilities off Lugano's books and records." *Id.* ¶ 277.

The impact of Moti's fraud has been far-reaching.  Moti himself fled to Israel immediately following CODI's May 2025 disclosure and "is under investigation by the Federal Bureau of Investigation and the SEC."  *Id* ¶ 40.  He "is a defendant in at least a dozen lawsuits brought by former Lugano clients and business partners, as well as a lawsuit brought by Lugano itself."  *Id.*

Lugano filed for Chapter 11 bankruptcy on November 16, 2025, and the proceedings are ongoing in the Delaware bankruptcy court. *Id.* ¶ 278.  CODI—having directly loaned hundreds of millions of dollars to Lugano following the 2021 acquisition—stands to recover only a small percentage of that amount through the bankruptcy proceedings.  *Id.*  As Defendant Keller stated during the December 2025 call with investors: "Regardless of what we ultimately recover from Lugano bankruptcy, the cost of the Lugano fraud will by a wide margin represent the most significant loss that CODI has experienced since its inception."  *Id.*

### E.    Procedural background.

Plaintiff filed the AC on February 6, 2026.  ECF No. 68.  The AC asserts two causes of action: Count One for Violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder; and Count Two for Violations of Section 20(a) of the Exchange Act. AC ¶¶ 459-478. Plaintiff's claims are brought on behalf of a putative class of investors, and Plaintiff proposes a Class Period stretching from February 24, 2022, through December 4, 2025, inclusive.  Plaintiff broadly alleges that the CODI Defendants made

materially false or misleading statements or omissions of material fact during the Class Period relating to CODI's financial statements and results. *See id.* ¶¶ 305-95.

### III.    LAW AND ARGUMENT: AS THE AC FAILS TO PLEAD SCIENTER, THE MOTION TO DISMISS SHOULD BE GRANTED

#### A.    The PSLRA's heightened pleading requirements.

To state a claim under Section 10(b) and SEC Rule 10b-5 promulgated thereunder, a plaintiff must plead: (1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance; (5) economic loss; and (6) loss causation. *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 351–52 (2d Cir. 2022). Claims for securities fraud arising under Section 10(b) are subject to the heightened pleading standards of the PSRLA, which was enacted "[i]n response to concerns about perceived abuses of the class action device in litigation involving nationally traded securities." *Levinson v. PSCC Servs., Inc.,* No. 3:09-CV-00269 PCD, 2009 WL 5184363, at *8 (D. Conn. Dec. 23, 2009). To state a claim for securities fraud, a securities fraud plaintiff not only must satisfy the standards of Federal Rules of Civil Procedure 12(b)(6) and 9(b), but also must plead both falsity[2] and scienter with particularity. *See* 15 U.S.C. § 78u-4(1)-(2).

To satisfy the scienter requirement under the PSLRA, a plaintiff must "state with particularity facts giving rise to a **<u>strong inference</u>** that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). "[I]t is not sufficient to set out 'facts from which, if true, a reasonable person <u>could</u> infer that the defendant acted with the required intent." *S. Cherry St., LLC*, 573 F.3d at 110 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007)); *Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 149 (D. Conn. 2007)

---

[2] For purposes of this motion, the CODI Defendants do not challenge the elements of the claims besides scienter, but reserve their defenses to other elements if this matter proceeds beyond this motion.

(establishing that the inference of scienter "must be more than merely plausible or reasonable" (quoting *Tellabs, Inc.,* 551 U.S. at 309)).  Instead, "[u]nder this heightened pleading standard for scienter, a 'complaint will survive ... only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010) (quoting *Tellabs*, 551 U.S. at 322); *see also, e.g.*, *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (PSLRA heightened pleading standard different from drawing inferences in favor of non-movant).

The requisite scienter for a Rule 10b-5 claim is "an intent to deceive, manipulate or defraud."  *In re WWE*, 180 F. Supp. 3d at 185.  To satisfy this element, "a complaint must allege facts showing '(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Arkansas Pub. Emps.*, 28 F.4th at 355 (quoting *ECA, Loc. 134*, 553 F.3d at 198).  If plaintiff fails to satisfy the motive showing, "the strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater."  *ECA, Loc. 134 IBEW*, 553 F.3d at 199.

Here, because Plaintiff has not pleaded particularized facts to show either motive and opportunity or conscious misbehavior or recklessness, its claims should be dismissed.

   **B.**   **Plaintiff fails to adequately plead scienter.**

   **1.**   **Plaintiff does not plead motive and opportunity.**

     **a.**   **The requirements to plead motive and opportunity.**

"In order to raise a strong inference of scienter through 'motive and opportunity' to defraud, Plaintiffs must allege that the corporate defendant or its officers benefitted in some concrete and personal way from the purported fraud."  *In re WWE*, 180 F. Supp. 3d at 186 (quoting

*ECA, Loc. 134*, 553 F.3d at 198).   A "generalized business motive" to increase officer compensation or to increase the company's stock price is insufficient to plead motive and opportunity, because such motives are endemic to virtually all corporate officers in the United States.  *See Arkansas Pub. Emps.*, 28 F.4th at 355; *see also In re WWE*, 180 F. Supp. 3d at 187 (plaintiff did not adequately plead scienter on basis of motive and opportunity where there was "a general motive to increase the profits of [a company] or officer and director compensation").

        **b.**        **Plaintiff does not allege any stock sales by the Individual Defendants.**

The quintessential way to plead motive and opportunity is to allege facts showing that the defendants sold their own shares on the market at opportune times—usually when the stock price is high, before the disclosure of negative news causes the stock price to drop.  As the Second Circuit has held: "[T]he motive showing is generally met when corporate insiders allegedly make a misrepresentation in order to sell their own shares at a profit."  *ECA Local*, 553 F.3d at 198-99; *see also Hills v. BioXcel Therapeutics, Inc.*, No. 3:23-CV-00915, 2024 WL 3374145, at *18 (D. Conn. July 11, 2024) (same).

Here, there is not a single allegation in the 260+ page AC that any of the Individual Defendants—CODI's CEO, two of its CFOs, and its COO—sold a single share of CODI stock during the nearly four-year putative Class Period.[3]  This omission should be fatal to Plaintiff's

---

[3] Instead, as is clear from documents filed with the SEC, Defendants Sabo, Keller, Maciariello, and Faulkingham collectively **bought** over $4,700,000 in CODI stock during the putative Class Period. *See* Compass Div. Hold., Statements of Changes in Beneficial Ownership (Form 4) filed from Mar. 2, 2022-Mar. 3, 2025. Indeed, the Defendants continuously increased their stock holdings until two months before the "truth was revealed." *See* Compass Div. Hold., Statement of Changes in Beneficial Ownership (Form 4) (Mar. 4, 2025), https://www.sec.gov/Archives/edgar/data/1993880/000095017025031945/xslF345X05/ownership.xml.  As courts in this District have held, buying stock throughout the Class Period is "a fact wholly inconsistent with fraudulent intent." *Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009) (quoting *In re Bristol–Myers Squibb Sec. Litig.*, 312 F.Supp.2d 549, 561 (S.D.N.Y. 2004)).

attempts to plead motive and opportunity.  Indeed, this Court and others have declined to find motive and opportunity, and dismissed securities fraud claims, where the plaintiff did not plead stock sales by insiders: "The plaintiffs have not alleged that any of the defendants named in Count I benefited in any concrete and personal way from the alleged fraud.  For example, they have not alleged that any of the defendants named in Count I sold any of their stock during the Class Period." *In re WWE*, 180 F. Supp. 3d at 187; *see also Greco v. Qudian Inc.*, No. 1:20-CV-577-GHW, 2022 WL 4226022, at *25 (S.D.N.Y. Sept. 13, 2022) ("[T]he absence of stock sales by insiders . . . is inconsistent with an intent to defraud shareholders." (quoting *In re N. Telecom Ltd. Secs. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000))).  That the Defendants here never sold their stock—including as Lugano's ostensible growth was fueling a rise in the stock price—essentially defeats any inference of motive and opportunity.

### c.    Other allegations in the AC cut against "motive and opportunity."

In addition to the omission of any allegations regarding insider stock sales, the AC includes other allegations that likewise cut against any inference of motive and opportunity.

### (i)    Sostratus

Plaintiff alleges that "current and former Compass executives"—including Defendants Sabo, Faulkingham and Keller—owned an entity called "Sostratus LLC," contained "within Compass's corporate structure."  AC ¶ 27.  As alleged in the AC, "Sostratus is entitled to receive profit allocation payments whenever Compass maintains a subsidiary for five years or whenever Compass divests from a subsidiary.  These payments are calculated based on the subsidiary's aggregate contribution to the Company's profit."  *Id.*  Put differently, certain of the Individual Defendants were positioned to make more money—and thereby benefit in a concrete and personal way—when a CODI subsidiary contributed to the Company's profit and either was (i) sold or

divested by CODI or (ii) remained within the CODI corporate family for more than five years. Thus, Defendants Sabo, Keller and Faulkingham were allegedly incentivized to keep Lugano appearing to be profitable until it was divested, or through September 2026 (the five-year anniversary of CODI's acquisition).

Yet CODI disclosed the fraud before either happened.  With respect to divestiture, the AC alleges that CODI was actively "considering selling Lugano during the Class Period" as early as November 2023 and continuing through 2024.  *Id.* ¶¶ 95-97.  "Had Compass divested from Lugano, certain members of Compass' executive management—including Defendants Sabo, Keller and Faulkingham—would have received a portion of Compass' profits from the divestiture through their shares in Sostratus."  *Id.* ¶ 98.  But that never happened; no divestiture occurred. Likewise, these Defendants were theoretically motivated to keep Lugano appearing to be contributing to CODI's profit through September 2026.  Again, that did not happen, as CODI disclosed the fraud at Lugano beginning in May 2025.

The AC's allegations relating to Sostratus undercut any inference of motive and opportunity.

### (ii)    Compass Group Management

Compass Group Management LLC ("CGM") is a Delaware limited liability company that, through a Management Services Agreement, serves as the external manager of CODI.  AC ¶ 26. Under the Management Services Agreement, CODI paid CGM "a quarterly management fee equal to 0.5% (2% annually)" of CODI's adjusted net assets.  *Id.*  Certain Compass executives— including all of the Individual Defendants here—were employees of CGM and received their compensation through CGM.  *Id.*  ("Under the MSA, Compass pays management fees to CGM, which includes the compensation paid to Compass' executive management—including the Individual Defendants, all of whom were employees of CGM.").  As a result of this compensation

structure, the Individual Defendants' compensation increased (through higher management fees) with CODI's financial performance. *Id.* ¶ 87.

Plaintiff alleges that this compensation structure shows motive and opportunity. But Plaintiff's theory is wrong under the law. A securities fraud plaintiff cannot show motive and opportunity by alleging that an individual defendant's compensation would increase (through salary, stock options, bonuses or other incentive-based fees) if the company's financial performance improves, as such "motives" are endemic to most corporate officers. As this Court made clear in *In re WWE*: "To the extent the plaintiffs allege a general motive to increase the profits of WWE or officer or director compensation*, motives that are common to most corporate officers, such as the desire … to increase officer compensation, do not constitute motive for purposes of this inquiry." 180 F. Supp. 3d at 189; *see also Singh*, 277 F. Supp. 3d at 317. "The Second Circuit has generally held that, among others, (1) the desire for the corporation to appear profitable, (2) the desire to keep stock prices high to increase officer compensation, and (3) the desire to maintain the appearance of profitability are insufficient motives." *Singh*, 277 F. Supp. 3d at 217 (internal quotations and citations omitted).

Here, Plaintiff's allegations that the Individual Defendants would receive higher compensation (through management fees from CGM) if CODI was more profitable are the sort of garden variety allegations that these courts and others have found insufficient to show motive and opportunity. They should also be rejected here.

Furthermore, to the extent management fees were overpaid to CGM and the Individual Defendants during the Class Period based on Lugano's misstated financials, those fees will be recovered by CODI either as offsets against future payments to CGM or through clawbacks. As Plaintiff alleges, "disclosed in Compass's Form 10-Q for the quarter ended June 30, 2025, that was

filed on December 29, 2025, Compass currently estimates that Lugano's financial irregularities led CGM to be overpaid $43 million in management fees during the Class Period." AC ¶ 26.  That same 10-Q form makes clear that, under the MSA, "future payments under the MSA will be reduced, on a dollar-for-dollar basis, by the aggregate amount of all overpaid management fees." Compass Div. Hold. Co., Quarterly Report (Form 10-Q), at 44 (Dec. 29, 2025), https://www.sec.gov/Archives/edgar/data/1345126/000134512625000092/codi-20250630.htm ("December 29, 2025 Form 10-Q"); *see also* AC ¶ 26 (summarizing Management Services Agreement, citing December 29, 2025 Form 10-Q).  Additionally, "[CODI's] board of directors intends to direct the Company to pursue its right to recover all such excess management fees paid to [CGM]."  December 29, 2025 Form 10-Q at 44.  In other words, any inflated management fees must be returned by CGM to CODI or would otherwise go to reduce future payments, dollar-for-dollar, owed to CGM.  There is no benefit to CGM or the Individual Defendants to have CODI overpay management fees.  Thus, the allegations do not show scienter on the basis of motive and opportunity.

* * * * *

In sum, Plaintiff has failed in the AC to plead particularized factual allegations showing motive and opportunity, and the Court should accordingly decline to infer scienter on this basis.

**2.      The AC does not contain particularized factual allegations showing scienter through conscious misbehavior or recklessness.**

**a.      The standards for pleading conscious misbehavior or recklessness.**

Where, as here, a plaintiff fails to plead motive and opportunity, the plaintiff can still plead scienter through circumstantial allegations of conscious misbehavior or recklessness—but "the strength of the circumstantial allegations must be correspondingly greater" without motive and opportunity.  *ECA, Loc. 134 IBEW*, 553 F.3d at 199; *Singh*, 277 F. Supp. 3d at 320.  In order to

plead conscious misbehavior, Plaintiff must sufficiently allege actual intent. *See In re Bristol-Myers*, 658 F. Supp. 3d at 230. To plead recklessness, Plaintiff must allege "a state of mind approximating actual intent, and not merely a heightened form of negligence." *In re WWE*, 180 F. Supp. 3d at 187 (quoting *S. Cherry St.*, 573 F.3d at 109). Courts in the Second Circuit have described circumstantial evidence of recklessness as (1) conduct which "is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so **obvious** that the defendant must have been aware of it," (2) "evidence that the defendants failed to review or check information that they had a duty to monitor, or ignored **obvious** signs of fraud, and hence should have known that they were misrepresenting material facts," or (3) in "some cases," "an egregious refusal to see the **obvious**, or to investigate the doubtful." *S. Cherry St.*, 573 F.3d at 109 (internal quotation marks omitted and emphases altered); *see also Puchtler v. Barclays PLC*, No. 25-995, 2025 WL 3495490, at *2 (2d Cir. 2025) (scienter can be pleaded through particularized factual allegations showing that the defendants "engaged in deliberately illegal behavior; knew facts or had access to information suggesting that their public statements were not accurate; or failed to check information they had a duty to monitor" can sometimes "give rise to a strong inference of the requisite scienter.").

Additionally, where an independent auditor did not detect the alleged obvious signs of false accounting information, the most compelling inference is that the accounting issues were not "obvious" and thus the defendants did not act with scienter. *See, e.g.*, *In re Iconix Brand Grp., Inc.*, No. 15-cv-04860-PGG, 2017 WL 4898228, at *19 (S.D.N.Y. Oct. 25, 2017) ("[T]he fact that BDO did not detect, observe, or otherwise note any improprieties in [defendant's] financial accounting—over three consecutive audit years—is significant.").

Here, as stated below, the AC fails to sufficiently plead that any CODI Defendant acted recklessly or with conscious misbehavior.

           **b.**        **There are no particularized allegations showing the CODI Defendants knew facts or had access to information suggesting their public statements were not accurate.**

In the Second Circuit, scienter can be inferred where a complaint includes particularized factual allegations showing that the defendant "knew facts or had access to information suggesting that their public statements were not accurate." *Puchtler,* 2025 WL 3495490, at *2; *First New York Sec., L.L.C. v. United Rentals, Inc.*, 648 F. Supp. 2d 256, 271 (D. Conn. 2009). In order to plead scienter this way, the complaint "must specifically identify the reports or statements containing this information," *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000), and must further allege with particularity that the defendants knew about or had access to "[1] <u>specific</u> contradictory information . . . [2] <u>at the same time</u> they made their misleading statements." *Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 237 (S.D.N.Y. 2020) (quoting *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 813 (S.D.N.Y. 2018)).

Here, Plaintiff has failed to plead particularized facts to meet these standards.

           **(i)**        **The so-called "whistleblower reports" do not show that the CODI Defendants knew, or were reckless in not knowing, that their public statements were false.**

Plaintiff refers in its AC to two "whistleblower reports." Neither creates a strong inference of scienter.

           **(a)**        **The first "whistleblower report".**

The first "whistleblower report" was allegedly submitted by an anonymous employee nearly two and a half years into the putative Class Period, on June 4, 2024. AC ¶ 183. This first report was allegedly submitted to CODI "via a third-party website called

whistleblowerservices.com." *Id.*   It did not provide any specific details with respect to Moti's investment diamond transactions or other fraudulent conduct. *Id.* ¶ 184.  Rather, it broadly stated that "the sales reported by Lugano are not accurate" and that "most of the sales are done by the owner and not by the sales staff at all." *Id.*  There is no explanation, let alone a particularized one, as to why sales by a CEO instead of low-level sales staff is indicative of fraudulent conduct, particularly where the CEO was also a salesman. *See, e.g., id.* ¶ 101 (". . . Moti or another Lugano salesperson . . .").  The anonymous employee is alleged to have received a response to his complaint through "whisteblowerservices.com" on August 26, 2024, from the "Compass Diversified Holdings Financial Concern Hotline Administrator." *Id.* ¶ 186. The response allegedly stated that the original submission had been "evaluated" and marked "dismissed" in the administrator's files. *Id.*  The Former Employee who submitted the first whistleblower report "found Compass' response troubling," but is not alleged to have done anything further; he[4] is not alleged to have shared his concerns with anyone else at CODI or to have distributed his "report" to others.

The allegations regarding this first whistleblower report do not show conscious misbehavior or recklessness, for several reasons.  First, there is no allegation that any Individual Defendant (or any officer or director of CODI, for that matter) was given this whistleblower report or even made aware of its existence.  Instead, Plaintiff alleges only that the report was submitted to a third-party website and stops there.  This alone is inadequate to support any inference of conscious misbehavior or recklessness. *See, e.g., Woolgar*, 477 F. Supp. 3d at 237 (finding lack of scienter because "Plaintiff has failed to adequately plead that Defendants were aware of any

---

[4] Individuals referenced as "Former Employees" in the AC are referred to using male pronouns, regardless of gender, to preserve anonymity.  AC ¶ 39 n.4.  This Memorandum adopts this approach.

specific, contradictory information at the time they made the allegedly false and misleading statements") (collecting cases).

Second, in an implicit acknowledgement that the first whistleblower report was not provided to any Individual Defendants or other CODI executives, Plaintiff alleges that the report "**should have** been shared with Compass's executive management." AC ¶ 414. Under the PSLRA, however, "should have" is clearly not good enough: "[M]ere allegations that defendants 'would have' or 'should have' had such knowledge is insufficient" to establish recklessness. *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011). "Should have" might be relevant to a negligence inquiry, but negligence is undisputedly not the requisite standard. Thus, Plaintiff's conclusory allegation that the first whistleblower report should have been shared with Compass's executive management is insufficient to plead scienter. *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 393, 407 (S.D.N.Y. 2016) (scienter related to a whistleblower report "cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information").

Third, the allegations relating to the first whistleblower report suffer from a timing problem. The first report was submitted on June 4, 2024. Thus, even assuming it described the issues at Lugano with sufficient particularity and had been provided to any Individual Defendants, it still could not show scienter for any statements made for the bulk of the Class Period, which begins nearly two-and-a-half years earlier, in February 2022. Definitionally, if the whistleblower report was not submitted until June 4, 2024, then the CODI Defendants could not even have had access to it before then, and therefore could not have known their statements to the market were false or misleading.

(b)   **The second "whistleblower report"**.

The second "whistleblower" report fares no better.  As alleged in the AC, "in the Fall of 2024," Lugano's controller (an individual named Dan Perushek) "presented the results of his" and a former Lugano employee's "investigation into Lugano's financial irregularities to Compass' internal audit team."  AC ¶ 415.

Like the first whistleblower report, the second "report" also fails to create an inference of scienter for several reasons.  First, while the AC alleges that Mr. Perushek investigated three investment diamond transactions at Lugano, the AC does not provide details or specifics as to what "findings" regarding his "investigation" Mr. Perushek allegedly reported to the "internal audit team."  Without alleging more with respect to what was actually "reported," these allegations cannot create an inference of scienter, as unparticularized statements attributed to whistleblowers "do not amount to **facts** giving rise to a strong inference that the Individual Defendants themselves knew or should have known of the accounting errors . . . at the time the alleged misstatements were made."  *Patel v. L-3 Commc'ns Holdings Inc.*, 14-CV-60382016, 2016 WL 1629325, at *10 (S.D.N.Y. Apr. 21, 2016)

Second, here again, Plaintiff does not allege that this second "report" or any related information was ever provided by Lugano to the Individual Defendants, refuting any inference of recklessness or conscious misbehavior.  Plaintiff must "specifically detail what the Individual [] Defendants knew, when they learned it, or from whom"—but does not do so here. *Id.* at *9 n.29 (citing *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 739 (S.D.N.Y. 2015)); *see also In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672-ALC, 2018 WL 4168958, at *18 (S.D.N.Y. Aug. 30, 2018) ("Courts in this Circuit have rejected similar attempts to hold senior officers liable based on their position and complaints to 'senior management' in the absence of specific allegations that the named defendant actually received information about the fraud.") (collecting cases).  Plaintiff

- 23 -

again argues that "Perushek's report <u>should have</u> been shared with Compass' executive management," AC ¶ 415, but "should have" is not enough for the reasons stated above.

<u>Third</u>, the second whistleblower report suffers from the same temporal flaws as the first. Mr. Perushek is alleged to have reported his findings to internal audit in the "Fall of 2024," meaning that his report could not serve as the basis for inferring scienter for most of the Class Period anyway.

> **(ii)    The CODI Defendants did not receive any other contemporaneous information to support an inference of conscious misbehavior or recklessness.**

Plaintiff makes several other allegations that attempt to show that the CODI Defendants knew, or were reckless in not knowing, that their statements were false—but none of these is sufficient to show scienter, individually or holistically.

**<u>SOX Processes and internal controls at Lugano</u>**: Plaintiff alleges that Moti caused delays and resistance at Lugano regarding the implementation of "Sarbanes-Oxley" ("SOX")[5] processes there, and that CODI otherwise neglected to install sufficient internal controls at Lugano. But Plaintiff never links this with any of the CODI Defendants and the AC lacks particularized facts to support this theory. The AC alleges only "that Moti and Lugano's sales team 'dragged their feet' in providing supporting documentation" until sometime around "the end of 2023, [when] Lugano was generally complying with audit timelines." *Id.* ¶¶ 416, 148. Plaintiff again never alleges that the CODI Defendants learned of or had access to contemporaneous information discussing Moti's resistance to SOX processes and internal controls, defeating any inference of

---

[5] The Sarbanes-Oxley Act was passed by Congress in 2002, following the "dot-com" financial crisis, in order to reduce accounting fraud and corporate corruption by regulating corporate governance, risk management, auditing, and public company financial reporting. *See Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014).

scienter.[6]  *See Patel*, 2016 WL 1629325, at *10 (deficiencies in internal controls did not support scienter because the plaintiffs "have not pled . . . that there was something 'obvious' or 'doubtful' that [the defendants] 'egregious[ly] refus[ed] to see ... or to investigate.'") (quoting *Novak*, 216 F.3d at 308)); *see also Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 307 (S.D.N.Y. 2019) (dismissing scienter claims because "the fact that [a defendant] had a duty to review [the Company's] internal controls is not a substitute for specific allegations that [he was] provided with information that demonstrated the *inadequacy* of [those] internal controls." (quoting *Barrett*, 2017 WL 3995606, at *9)); *Patel*, 2016 WL 1629325, at *10 (internal control allegations insufficient to plead scienter "because of the lack of specificity regarding the transmission of information from lower-level employees in Huntsville to [the defendant]'s headquarters").

**Visits to Lugano Salons**: Plaintiff's arguments concerning Defendants Sabo, Maciariello,[7] and Keller's "personal rather than business-related" trips to Lugano's salons and members-only club, Privé, also fail.  AC ¶ 126; *see also id.* ¶ 84 (defining Privé).  Courts have declined to embrace

---

[6] The AC's references to the "tone at the top" of Lugano—but not CODI—also do not support an inference of conscious misbehavior or recklessness.  There are no allegations that the "tone at the top" of CODI was inappropriate or fraudulent.  Further, claims predicated on "issues flowing from the bottom-up" do not support scienter on this basis. *See Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 552 (S.D.N.Y. 2017).

[7] Plaintiff also generally and mistakenly alleges that the CODI Defendants should have known statements were false because Defendant Maciariello was chair of the Lugano board of directors and Defendant Faulkingham supposedly (but not actually) "had authority over . . . the Audit Committee" as the CFO.  *See, e.g.*, AC ¶¶ 329, 414.  Yet there are no particularized allegations that either Defendant, in their alleged positions or otherwise, knew or was reckless in not knowing about "[1] *specific* contradictory information . . . [2] *at the same time*" as any alleged false statements. *See Woolgar*, 477 F. Supp. 3d at 237.  Consequently, their positions at CODI alone cannot create a strong inference of scienter. *See Fogel v. Wal-Mart de Mexico SAB de CV*, No. 13 CIV. 2282, 2017 WL 751155, at *16 (S.D.N.Y. Feb. 27, 2017), *aff'd sub nom. Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018) ("[C]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." (quoting *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 350 (S.D.N.Y. 2015)).

the "inferential leap" that "visits by [Individual Defendants] to [store locations] are sufficient to establish scienter for the abuses allegedly occurring at those [locations]." *Schaffer v. Horizon Pharma PLC*, No. 16-cv-01763-JMF, 2018 WL 481883, at \*12 (S.D.N.Y. Jan. 18, 2018).  Indeed, Plaintiff's shopping allegations here are even weaker than those that courts in the Second Circuit have already rejected because the Individual Defendants are alleged to have occasionally visited the stores during their personal time, where they spent their time "discussing personal topics like children and marriage anniversaries rather than Compass or Lugano matters."  AC ¶ 126.  The Individual Defendants are not alleged to have observed or been made aware of Moti's fraud or Lugano's accounting improprieties during these visits.  These allegations do not come close to creating a strong inference of scienter.  *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 237 (S.D.N.Y. 2022) (allegations that the defendants "regularly visited the Mine" did not support scienter because the complaint did not "specifically identify any 'contrary facts' that these defendants would have observed or had access to on these visits or, even for that matter, when those visits occurred"); *In re AppHarvest*, 684 F. Supp. 3d 201, 244 (S.D.N.Y. 2023) (allegations that defendant visited a facility "every morning" and "instructed others to hide the waste" were insufficient to establish scienter).

          **c.**       **Allegations attributed to Former Employees do not create a strong inference of scienter.**

Plaintiff also relies on the accounts of twelve so-called "former employees"—all but one of whom were former employees of Lugano, not CODI—to support its claims.  These allegations likewise do not show or contribute to a strong inference that the CODI Defendants acted recklessly or with conscious misbehavior.

Courts in the Second Circuit are permitted to consider allegations attributed to "former employees" or "confidential witnesses"—but only if the sources are "described in the

- 26 -

complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Malin*, 499 F. Supp. 2d at 138 (quoting *Novak*, 216 F.3d at 314). Critically, allegations attributed to former employees are relevant to the scienter analysis only if, as a threshold matter, there is some concrete and tangible link between the former employees and the individual defendants (i.e., the people alleged to have made misstatements to the market): "For information from a confidential witness to establish scienter [] the complaint 'must describe the nature of the CW's contact with the individual defendants that would be probative of defendants' mental state.'" *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (quoting *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 n.19 (S.D.N.Y. 2020)). This makes sense, because if the former employee did not have sufficient "contact" with the individual defendants, then the former employee's purported knowledge would be irrelevant to determining the defendants' states of mind.

Here, while there are 12 anonymous former employees referenced in the AC, <u>none</u> is alleged to have had any direct contacts, discussions, or communications with any of the Individual Defendants over the nearly four-year Class Period. On this basis alone, the accounts of the "FEs" should be rejected. *See, e.g.*, *Schiro*, 396 F. Supp. 3d at 305 (finding lack of scienter where "[p]laintiffs do not allege that the 'facts' known to the confidential witnesses . . . made their way up the entire corporate hierarchy to the Individual Defendants" at the parent corporation). Whatever "knowledge" or "information" these former employees may have possessed, it is irrelevant to the scienter analysis because none of that knowledge or information is alleged to have been communicated to the Individual Defendants. Thus, the Individual Defendants definitionally could not have been reckless in disregarding information that was never shared with them. *Eden*

*Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 298 (E.D.N.Y. 2025) ("The absence of any communication between the FEs and the Individual Defendants" related to a subsidiary's fraudulent practices "is fatal to Plaintiff's theory of scienter.").

Plaintiff also fails to sufficiently allege that a person in the FEs' positions would possess the information alleged in the AC, further discounting their allegations. Only one of the twelve former employees (FE 1) is alleged to have worked at CODI. The allegations attributed to FE 1 are unreliable, as Plaintiff never identifies FE 1's position at the company and the unparticularized statements attributed to him primarily derive from hearsay accounts of conversations with coworkers, none of whom were the Individual Defendants. *See In re The Hain Celestial Grp. Inc. Sec. Litig.*, No. 2:16-cv-04581-ADS-SIL, 2019 WL 1429560, at *18 (E.D.N.Y. Mar. 29, 2019) (finding confidential witnesses to be "unreliable" because "the allegations from the CWs . . . are vague and often based on multiple layers of belief or hearsay"); AC ¶¶ 39, 142 (discussing statements that "FE 1 learned about through colleagues at investment team meetings"). Additionally, FE 1's purported statements about diligence were not directed to the 2021 Lugano acquisition and could not have been, as FE 1 was allegedly employed by CODI only 2024-2025. *Id.* ¶ 39.

The accounts of the remaining Lugano "former employees" are equally unavailing. As an initial matter, many of the FEs that allegedly occupied executive positions left the company well before the Class Period began. *Id.* ¶ 50 (alleged former CFO FE 6 worked at Lugano from 2014-2016); *id.* ¶ 48 (alleged senior accountant FE 4 August 2020-February 2021); *id.* ¶ 51 (alleged Operations Manager FE 7 March 2014-December 2021). The other "FEs" were primarily low-level employees who, as Plaintiff concedes, did not occupy positions that could have exposed them to Moti's sophisticated fraudulent activities. Almost half of Plaintiff's sources worked at Privé or

in Lugano's stores. *Id.* ¶ 46 (FE 2 was a Director of a Lugano Salon); *id.* ¶ (FE 8 managed sales installations at equestrian events); *id.* ¶ 53 (FE 9 was a Privé member specialist); *id.* ¶ 54 (FE 10 was an operations manager at a salon); *id.* ¶ 55 (FE 11 worked in sales at a Lugano salon). In these roles, the "FEs" dealt primarily with Lugano's customers and conceded that they had limited insight into Lugano's broader accounting practices. *See, e.g.*, *id.* ¶ 152 (FE 2 admitting that he was not involved in CODI's audit of the company). Despite their low-level positions, the AC improperly relies upon individuals such as FE 8 (a manager of sales installations at equestrian events from 2019-2022) to attest to complex structural issues related to Lugano's accounting and financial integrity. *See, e.g.*, *id.* ¶ 139 (FE 8 stating that "the math behind Lugano's business model 'never matched'"); *id.* ¶ 151 (FE 2 discussing the activities of CODI's audit team after admitting that he "did not work directly with CODI's audit team in his capacity as salon director"); *id.* ¶ 53, 167 (alleged "Privé Member Specialist" describing the funding sources, negotiation process, and discrete terms of Moti's diamond deals). These allegations do not support a "probability" that the individuals in the FEs' positions would possess the information attributed to them in the AC.

Nor are the FEs' allegations sufficiently alleged to be based on their personal knowledge. The allegations attributed to Lugano's FEs reflect what they "believed," "speculated," and heard from others. *See, e.g.*, *id.* ¶¶ 104, 135, 137, 167. This further undercuts any inference of conscious misbehavior or recklessness. *See, e.g.*, *Schiro*, 396 F. Supp. 3d at 305 (allegations attributed to confidential employees at a subsidiary were "too vague, speculative, and conclusory to contribute to an inference of scienter"); *Glaser*, 772 F. Supp. 2d at 589-90 ("[E]ven confidential high level executives' statements will be insufficient absent some allegation that the witness communicated with the individual defendants claimed against in the case, or else that the witness was privy to the individual defendants' knowledge.").

**d.      The "magnitude of the restatement" and "core operations doctrine" do not support a strong inference of scienter.**

To try to show conscious misbehavior or recklessness, Plaintiff also makes allegations about the "magnitude of the Restatement," AC ¶ 420, and argues that Plaintiff has "established scienter by way of the core operations inference" because "of Lugano's importance to Compass's overall operations." *Id.* ¶ 428.   These allegations boil down to an argument that the CODI Defendants must have acted with scienter because Lugano was an important subsidiary.   Courts in the Second Circuit have rejected such arguments as insufficient to allege scienter under the PSLRA.

The "core operations doctrine" is a pre-PSLRA doctrine that "permits an inference that a company and its senior executives have knowledge of information concerning the 'core operations' of a business." *N.Y.C. Pub. Pension Funds v. Coupang, Inc.*, No. 22-cv-07309-VSB, 2025 WL 2613650, at *31 (S.D.N.Y. Sept. 10, 2025) (dismissing Rule 10b-5 claim with prejudice; holding insufficient allegations of scienter).   "This doctrine typically applies where 'the operation in question constitute[s] nearly all of a company's business.'" *In re Piedmont Lithium Inc. Sec. Litig.*, 712 F. Supp. 3d 301, 323 (E.D.N.Y. 2024).   "[T]he Second Circuit [has] questioned whether the doctrine survived after the PSLRA was enacted." *Id.* (citing *Frederick v. Mechel OAO*, 475 F.App'x 353, 356 (2d Cir. 2012)).   Even if the core operations doctrine were still viable, "district courts in this circuit have found that **such allegations cannot on their own establish scienter**." *Id.* (emphasis added).   The core operations doctrine may bolster the strength of the inference of scienter only when, unlike here, "**plaintiffs have already adequately alleged facts** indicating that defendants might have **known** their statements were false." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011) (emphasis added).   "[A]llegations of accounting improprieties at a subsidiary," however, "are not enough to demonstrate scienter by a parent corporation and its

officers." *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) (citing *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 270–71 (2d Cir.1996); *see also Chill*, 101 F.3d at 270 ("[T]he success, even the extraordinary success, of a subsidiary will not suffice in itself to state a claim that the parent was reckless in failing to further investigate.").

The same is true for the size of the Restatement: "as with the 'core operations' doctrine, **absent facts indicating that defendants knew of the falsity** of their statements, that **an eventual write-off was large does not support** the required strong inference of misbehavior." *Glaser*, 772 F. Supp. 2d at 596–97 (emphases added) (write-down of 72% of net income "does not support the required strong inference of scienter"); *see also In re PXRE Grp., Ltd., Sec. Litig.,* 600 F. Supp. 2d 510, 545 (S.D.N.Y.), *aff'd*, 357 F.App'x 393 (2d Cir. 2009) (understatement of loss off by 80% failed to support strong inference of scienter).  "If scienter could be pleaded based solely on such allegations, virtually every company that issues a large restatement of revenue could be forced to defend securities-fraud actions—a result that is hard to square with this Circuit's understanding of the law." *In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 560 (S.D.N.Y. 2024) (insufficient allegations of scienter where restatement reduced revenue 90% for quarter and over half for the year).  The size of a restatement is "particularly" not suggestive of scienter when, like here, the misstatements are "made initially in the audited financial statements of a subsidiary." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13-cv-08846-LGS, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) (overstatement of annual revenue for two years of 32% and 36% not sufficient evidence of scienter).  In *Turquoise Hill*, the individual defendants and defendant parent company could not be deemed to have scienter based on a parent company's incorporation of misstated, audited subsidiary financials into its consolidated financials, since the accounting errors were not "necessarily obvious or straightforward" to the defendants. *Id.* at *6.   Here, Moti's active

concealment of his fraud cannot support scienter on the part of the CODI Defendants, as there are no particularized allegations that misstatements in the Lugano financials, incorporated into CODI's consolidated financials, were obvious or straightforward to the CODI Defendants.

Here, the core operations doctrine and the size of the Restatement do not support a strong inference of scienter. The Restatement involved the "audited financial statements of a subsidiary," Lugano, which is not suggestive of scienter. *See id.* at *7. Prior to the Restatement, Lugano accounted for 26.5% of Compass's assets. AC ¶ 85. Lugano was thus not "nearly all of a company's business," so the core operations doctrine (even if viable) is inapplicable. *In re Piedmont Lithium*, 712 F. Supp. 3d at 323.

Moreover, the reason that Lugano can even be characterized as a large subsidiary is because CODI provided hundreds of millions of dollars to Lugano to facilitate its growth. AC ¶ 82; *see also id.* ¶ 6 (alleging that CODI "fork[ed] over hundreds of millions of dollars to fund Lugano's purported expansion"). CODI stands to recover only a small percentage of those hundreds of millions through Lugano's bankruptcy proceedings. *See id.* ¶ 278. The most plausible explanation of CODI's continued bad investment in Lugano is that CODI did not know of Moti's fraud at Lugano. This further supports the fundamental point, as explained *supra* in Section III.A.2.b.i–.ii., that there are no facts that the CODI Defendants **knew** of the falsities necessitating the Restatement. Thus, the size of the Restatement and the importance of Lugano do not support a strong showing of scienter as a matter of law. *See, e.g.*, *Glaser*, 772 F. Supp. 2d at 596–97; *In re Piedmont Lithium*, 712 F. Supp. 3d at 323.

### e.      Plaintiff's other scienter allegations fail.

### (i)      Departures of executives.

Plaintiff alleges that the departures of Defendants Maciariello and Faulkingham during or after the Class Period are suggestive of scienter. But the mere fact that an Individual Defendant

departed during or after a putative class period does not itself show scienter in the Second Circuit. Instead, "absent additional factual allegations linking [an executive's] resignation . . . to the alleged fraud, such allegations are insufficient to raise a strong inference of scienter." *Woolgar*, 477 F. Supp. 3d at 240. Indeed, courts have cautioned against inferring scienter based on the departures or resignations of senior officers following adverse disclosures, because "when corporate misconduct is disclosed, members of management resign for all sorts of reasons, including . . . simply because the optics of changing management are better for investors and regulators." *Eden Alpha*, 763 F. Supp. 3d at 315.

Defendant Maciariello is alleged to have left his position as Chief Operating Officer in December 2025, after the putative Class Period. The AC contains no particularized allegations at all to connect his departure with any recklessness or conscious misbehavior. The AC alleges that FE 1 "believed" that CODI "cut ties" with him due to his "perceived responsibility for the Company's failure to detect and act on Lugano's financial irregularities." AC ¶ 287. FE 1's belief is not attributed to any facts, documents, sources, or communications, and so it can be easily disregarded; and even if it could be credited as reliable, a departure due to "perceived responsibility" would not show conscious misbehavior or recklessness. *See Eden Alpha*, 763 F. Supp. 3d at 315 (defendants' resignation "three months after Polished's announcement of the internal investigation" reflected a nonfraudulent "inference of mismanagement or one of the myriad other reasons an executive might resign").

The allegations related to Defendant Faulkingham's departure are likewise deficient. He is alleged to have stepped down from his position as Chief Financial Officer in August 2024. AC ¶ 188. Plaintiff makes no effort to connect Defendant Faulkingham's departure to the alleged fraud. Indeed, in a telling allegation, Plaintiff alleges that Defendant Faulkingham's departure in

August 2024 was "<u>perhaps not coincidentally</u>" in the same month that the first whistleblower report was resolved. *Id.* "Perhaps not coincidentally" is not even close to the requisite standards under the PSLRA and does not show recklessness or conscious misbehavior.

### (ii)    CODI's pre-acquisition due diligence does not show scienter.

Plaintiff also mistakenly alleges that CODI's due diligence preceding the Lugano acquisition in 2021 is reflective of scienter. This argument is not credible on its face: It is not plausible that CODI would have recklessly disregarded evidence of Lugano's financial irregularities and Moti's fraud in diligence, only to then spend $265 million dollars to acquire a controlling stake in Lugano, and to continue to inject hundreds of millions of dollars of capital into Lugano thereafter. Indeed, the AC explicitly alleges that CODI <u>was not</u> informed of "Lugano's improper recording of investment diamond transactions as revenue, efforts to avoid sales tax, and other suspicious practices" during its due diligence review. AC ¶ 117. Further, as a general legal matter, "conditional allegations of the sort that [a defendant] 'would' have learned the truth about a company's fraud through due diligence are 'generally insufficient' to plead scienter." *Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*, No. 21-909-CV, 2021 WL 5142702, at *2 (2d Cir. Nov. 5, 2021); *see also Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, No. 19-cv-07536-NRB, 2021 WL 1199035, at *26 (S.D.N.Y. Mar. 30, 2021) (finding lack of scienter because "the theory that IFF did not spend enough time conducting due diligence, which is predicated on information provided by a confidential witness with no firsthand knowledge, is more descriptive of negligence than conscious recklessness."). "[E]ven an egregious failure to gather information will not establish 10b–5 liability as long as the defendants did not deliberately shut their eyes to the facts." *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 129 (S.D.N.Y. 2013) (quoting *Hart v.*

*Internet Wire, Inc.,* 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001)).    Plaintiff makes no such particularized allegations.

### (iii)    Grant Thornton's audit opinions also cut against scienter.

Finally, as acknowledged in the AC, CODI's financial statements and internal controls were audited by Grant Thornton in 2022, 2023 and 2024.  In each of those years, Grant Thornton opined that CODI both (i) "maintained, in all material respects, effective internal controls" and that (ii) its financial statements "presented fairly, in all material respects, the financial position of the Company . . . and the results of its operations and its cash flows … in conformity with accounting principles generally accepted in the United States of America."  AC ¶ 5.  Courts have declined to find scienter in similar cases where an independent auditor contemporaneously reviews and opines upon a company's internal controls and financial statements.  *See, e.g.*, *In re Turquoise Hill*, 2014 WL 7176187, at *6 (insufficient allegations of scienter where the complaint did not allege auditors "disapproved of [defendant's] accounting practices or found any lack of internal controls prior to the restatement"; "a parent company's reliance on a subsidiary's audited financial statements is not necessarily unreasonable"); *In re Bausch.*, 592 F. Supp. 2d at 341 (no recklessness where outside auditor "concluded that management's assessment was fair and that [defendant]'s internal controls were effective"; "allegations of accounting improprieties at a subsidiary are not enough to demonstrate scienter by a parent corporation and its officers.").  The AC's own allegations regarding Grant Thornton's audits during the Class Period therefore cut against any inference that the CODI Defendants themselves were reckless when they spoke to the market about CODI's and Lugano's financial performance.

### C.    The AC suffers from additional pleading deficiencies.

For the reasons stated above, the allegations of the AC do not show motive and opportunity or conscious misbehavior or recklessness, and therefore Plaintiff fails to plead scienter.  The AC also suffers from additional pleading deficiencies that further illustrate the lack of scienter.

Specifically, the AC employs an impermissible "cut and paste" approach to pleading scienter that can be rejected on its face.  The PSLRA states that a securities fraud "complaint shall, with respect to **each act or omission** alleged to violate this chapter, **state with particularity** facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (emphasis added).  Here, Plaintiff pleads false and misleading statements or omissions by the CODI Defendants from Paragraphs 303 – 395 of the AC.  The allegedly false and misleading statements were made over three years, beginning in February 2022 and continuing through February 2025.  In the AC, Plaintiff breaks the false and misleading statements into 16 separate temporal quarters—e.g., statements made during the first fiscal quarter of 2022 (AC ¶ 308), statements made during the second fiscal quarter of 2023 (*id.* ¶ 359), and so on.  After alleging the false and misleading statements made during each quarter, Plaintiff then repeats, with minimal variation, the same list of 3-6 reasons why the Defendants "knew or recklessly disregarded" the falsity of their statements.  *See, e.g., id.* ¶ 314 (list of five reasons Defendants "knew or recklessly disregarded" falsity of statements regarding 2022 third quarter financials); *id.* ¶ 355 (list of four reasons—repeated verbatim from Paragraph 314—as to why Defendants "knew or recklessly disregarded falsity of statements throughout 2023); *id.* ¶ 374 (same list of five reasons when discussing 2024 financials).  This approach is deficient because, as courts have recognized, it does not meet the PSLRA's requirement to plead the requisite state of mind "for each act or omission" but instead "trades in generalities."  *See Kempen International Funds v. Syneos Health,*

*Inc.*, No. 23-cv-08848, 2025 WL 949576, at *3 (S.D.N.Y. March 28, 2025) (dismissing complaint due to "plaintiffs' cut-and-paste falsity and scienter allegations").

This "cut and paste" approach also fails to properly distinguish between and among the various CODI Defendants and oftentimes improperly lumps them together in ways that lead to implausible results. For example, at Paragraph 314 of the AC, Plaintiff alleges that "Defendants" (writ large) knew or recklessly disregarded the falsity of certain statements made throughout 2022. But Defendant Keller did not begin working at CODI until the summer of 2024—so how could he have acted with scienter when making statements in 2022? Likewise, Plaintiff alleges that Defendant Keller made statements on October 30, 2024, and that he knew or recklessly disregarded their falsity in light of "the Company's inadequate due diligence during the Lugano acquisition." Defendant Keller, however, joined CODI three years after the acquisition had occurred in 2021, rendering this allegation totally implausible.

This "cut and paste" approach and lumping together of Defendants also cuts against any inference of scienter.

### D.    The more compelling inference is nonfraudulent.

As the Supreme Court held in *Tellabs*, in order for a securities fraud suit to survive dismissal, the inference of scienter to be drawn from a complaint must be "strong" and "at least as compelling as any opposing inference one could draw from the facts alleged." 551 U.S. at 322. Here, the more compelling inference to be drawn from the AC is that CODI and the Individual Defendants were themselves misled and deceived by Moti into believing that Lugano was successful and growing. Moti actively concealed his fraud,[8] and the accounting irregularities within Lugano, from CODI and the Individual Defendants, so that they would continue to invest

---

[8] *See supra* Section II(C).

heavily into Lugano to fuel its growth. While this deceit caused many of Defendants' statements to the market to be wrong in hindsight, those statements were made with the mistaken—but non-fraudulent—belief that Lugano was in fact a growing and profitable business. Acting on this mistaken belief, CODI continued to provide "hundreds of millions of dollars to fund Lugano's purported expansion." *See* AC ¶ 6. Once the CODI Defendants realized the truth, they told the market, corrected their financial statements, and implemented various remedial processes. CODI now stands to recover only a small percentage of those hundreds of millions through Lugano's bankruptcy proceedings. *Id.* ¶ 278.

While this was undoubtedly—as Defendant Keller said in December 2025—"the most significant loss that CODI has experienced since its inception," it was not securities fraud; indeed, no cogent fraudster would behave this way. Plaintiff's claims should accordingly be dismissed. *See, e.g., In re Lihua Int'l, Inc. Sec. Litig.*, No. 14-cv-05037-RA, 2016 WL 1312104, at *15 (S.D.N.Y. Mar. 31, 2016) (allegations that directors and officers used a subsidiary to defraud the defendant corporation did not "establish an inference of scienter 'at least as compelling as' the opposing inference that Zhu and Wang kept their activities hidden from [the individual defendant]").

### E.    The Section 20(a) claim should be dismissed.

Plaintiff also asserts a cause of action for violations of Section 20(a) of the Exchange Act. Section 20(a) creates "control person liability" for certain officers and directors of a corporation. 15 U.S.C. §78t-1(a). In order to state a claim under Section 20(a), though, Plaintiff must sufficiently plead a "primary" violation of Section 10(b) or some other underlying provision of the securities laws; if the Section 10(b) claim fails, then so too does the Section 20(a) claim. *See In re WWE Sec. Litig.*, 180 F. Supp. 3d at 181 ("In order to state a claim under § 20(a), the plaintiff must plead as a predicate an independent violation of the [Exchange] Act."); *see also In re*

*LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 364 (S.D.N.Y. 2005) ("Since a Section 10(b) claim has not been stated against the defendant, it follows that a Section 20(a) claim has not been stated.").

Because Plaintiff has failed to state a claim under Section 10(b) for the reasons stated above, Plaintiff's claim under Section 20(a) of the Exchange Act should also be dismissed. *See In re Dentsply Sirona, Inc. Securities Litig.*, 2026 WL 124581, at ¶ 52 (S.D.N.Y. 2026). ("[T]he Section 20(a) claim against Gomez is dismissed because plaintiffs have failed to establish a strong inference that he acted with scienter.").

### F.    The Court should dismiss the AC with prejudice.

Further amendment of the AC would be futile. Despite plaintiff Moreno's original and amended complaints, ECF Nos. 1, 13, followed by Plaintiff's extensive investigation and further amendment with the 260+ page AC, Plaintiff still has not pleaded, and cannot plead, particularized facts sufficient to demonstrate that the CODI Defendants acted with scienter. This is a substantive failure of Plaintiff's claim. Because Plaintiff cannot transform Moti's fraud into cognizable securities claims against the CODI Defendants, dismissal should be with prejudice. *See, e,g.*, *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 181 (S.D.N.Y. 2023) (dismissing lead plaintiffs' complaint with prejudice because "[w]here the problems with a claim are substantive rather than the result of an inadequately or inartfully pleaded complaint, an opportunity to replead would be futile and should be denied"); *Fogel*, 2017 WL 751155, at *19 (dismissing securities claims predicated on fraud at a subsidiary with prejudice because the "amended portion of the complaint would fail to state a cause of action").

## IV.    CONCLUSION

For the reasons stated herein, the CODI Defendants respectfully request that the AC be dismissed, in its entirety.   Because Plaintiff has already amended the complaint and further amendment would be futile, dismissal should be with prejudice.


Dated: March 23, 2026.                              Respectfully submitted,

*/s/ Joseph C. Weinstein*
Squire Patton Boggs (US) LLP

Joseph C. Weinstein (admitted *pro hac vice*)
joe.weinstein@squirepb.com
Sean L. McGrane (admitted *pro hac vice*)
sean.mcgrane@squirepb.com
1000 Key Tower, 127 Public Square
Cleveland, OH 44114
Telephone: (216)-479-8500
Fax: (216)-479-8780

Elizabeth F. Ahlstrand
elizabeth.ahlstrand@squirepb.com
1120 Avenue of the Americas, 13th Floor
New York, NY 10036
Telephone: (212)-872-9887
Fax: (212)-872-9815


*Counsel for Defendants Compass Diversified*
*Holdings, Compass Group Diversified Holdings*
*LLC, Elias Sabo, Ryan J. Faulkingham, Stephen*
*Keller, and Patrick J. Maciariello*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum in Support of Motion to Dismiss was served on March 23, 2026, by filing it using the Court's CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Joseph C. Weinstein*
Joseph C. Weinstein

*An Attorney for CODI Defendants*