**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE COMPASS DIVERSIFIED HOLDINGS SECURITIES LITIGATION | CIVIL ACTION NO.: 3:25-CV-00758 (AWT) |
| | MARCH 23, 2026 |

**DEFENDANT GRANT THORNTON LLP'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND................................................................................................... 3

    I.    Compass and Its Subsidiary Lugano................................................................... 4

    II.   Grant Thornton's Audit Opinions........................................................................ 4

    III.  Compass's Audit Committee's Investigation and the Company's Restatement ............... 6

    IV.  Plaintiff's Pleadings and Claims Against Grant Thornton ................................ 7

ARGUMENT............................................................................................................................ 8

    I.    Plaintiff Fails to Allege Facts Establishing Falsity............................................ 9

        A.   The Alleged Misstatements in Grant Thornton's Audit Reports Are Statements of Opinion Under *Omnicare* ............................................................................. 10

        B.   Plaintiff Fails to Allege A False Statement of Opinion Under *Omnicare* .................... 12

            1. The Amended Complaint Does Not Allege that Grant Thornton Subjectively Disbelieved Its Audit Opinions When It Issued Them .................................................. 13

            2. The Amended Complaint Does Not Allege Materially False "Embedded" Statements of Fact........................................................................................................ 14

            3. The Amended Complaint Does Not Allege a False Statement of Opinion Under a Material Omission Theory ............................................................................... 15

    II.   Plaintiff Fails to Plead Facts Establishing Scienter ......................................... 20

        A.   Plaintiff's Hindsight-based Allegations of Missed "Red Flags" Fail to Establish Scienter as a Matter of Law ..................................................................... 23

        B.   Reference to the PCAOB's Annual Inspection Findings Do Not Support an Inference of Recklessness or Conscious Misconduct in the Compass Audits..................... 27

        C.    The Court Should Reject Plaintiff's Theory of Scienter Under *Tellabs* Because It Is Less Compelling than the Alternative Inference that Lugano's Management Deceived Grant Thornton. ........................................................................ 30

    III.  The Court Should Dismiss the Amended Complaint with Prejudice ............................... 34

CONCLUSION...................................................................................................................... 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
    965 F.3d 165 (2d Cir. 2020)......................................................................................14

*In re Advanced Battery Techs., Inc.*,
    781 F.3d 638 (2d Cir. 2015)........................................................................19, 20, 32

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021)..................................................................28, 29

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)......................................................................................................2

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
    No. 17-CV-1542 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)..................11

*Anvil Trust v. Ernst & Young*,
    No. 24-CV-9731 (PKC), 2026 WL 743608 (S.D.N.Y. Mar. 17, 2026)............12, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................4

*Athale v. SinoTech Energy Ltd.*,
    No. 11-cv-5831 (AJN), 2015 WL 13145808 (S.D.N.Y. Jan. 23, 2015) ..................32

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)................................................................................4, 20, 22

*Bonine v. Guccione*,
    No. 21-955, 2022 WL 102073 (2d Cir. Jan. 11, 2022) ............................................21

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
    556 F. Supp. 3d 100 (D. Conn. 2021).........................................................................6

*Buttonwood Tree Value Partners LP v. Sweeney*,
    910 F. Supp. 2d 1199 (C.D. Cal. 2012) ....................................................................11

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).........................................................................................5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) .......................................................................................9

*City of Warwick Ret. Sys. v. Carvana Co.*,
  CV 2022-013054, slip op. (Ariz. Sup. Ct. Oct. 26, 2023) ......................................................18

*Decker v. Massey-Ferguson, Ltd.*,
  681 F.2d 111 (2d Cir. 1982)...............................................................................................2

*DeLollis v. Friedberg, Smith & Co., P.C.*,
  933 F. Supp. 2d 354 (D. Conn. 2013)..............................................................................21, 29

*Denny v. Barber*,
  576 F.2d 465 (2d Cir. 1978).............................................................................................21

*Diabat v. Credit Suisse Grp. AG*,
  23-cv-5874 (CM), 2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024) ...................................25, 31

*In re DNTW Chartered Accts. Sec. Litig.*,
  96 F. Supp. 3d 155 (S.D.N.Y. 2015)...........................................................................22, 32, 33

*Duncan v. Pencer*,
  No. 94 CIV. 0321(LAP), 1996 WL 19043 (S.D.N.Y. Jan. 18, 1996) ....................................31

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
  595 F. Supp. 2d 1253 (M.D. Fla. 2009)..................................................................................29

*Friedman v. Self Help Cmty. Servs.*,
  No. 11-CV-3210 NGG JMA, 2015 WL 1246538 (E.D.N.Y. Mar. 17, 2015) .........................34

*Gamm v. Sanderson Farms, Inc.*,
  944 F.3d 455 (2d Cir. 2019)................................................................................................5

*Gillis v. QRX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016).....................................................................................14

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ...........................................................................................21, 29

*Hunt v. Bloom Energy Corp.*,
  No. 19-cv-02935-HSG, 2021 WL 4461171 (N.D. Cal. Sept. 29, 2021)............................15, 18

*Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*,
  973 F. Supp. 2d 459 (S.D.N.Y. 2013) ....................................................................................33

*In re J.P. Jeanneret Assocs., Inc.*,
  769 F. Supp. 2d 340 (S.D.N.Y. 2011)....................................................................................24

*Jaroslawicz v. M&T Bank Corp.*,
  962 F.3d 701 (3d Cir. 2020)..............................................................................................16

iv

*Johnson v. CBD Energy Ltd.*,
  No. H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) ...........................................14, 15

*In re Lehman Bros. Sec. & ERISA Litig.*,
  131 F. Supp. 3d 241 (S.D.N.Y. 2015).................................................................................11

*In re Lehman Bros. Sec. & Erisa Litig.*,
  799 F. Supp. 2d 258 (S.D.N.Y. 2011).................................................................................10

*Mehedi v. View, Inc.*,
  No. 21-cv-06374-BLF, 2023 WL 3592098 (N.D. Cal. May 22, 2023) .............................11, 15

*New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
  122 F.4th 28 (2d Cir. 2023) ....................................................................................... *passim*

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)................................................................................................... *passim*

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
  799 F. Supp. 3d 310 (S.D.N.Y. 2025)....................................................................5, 12, 16, 19

*In re Petrobras Sec. Litig.*,
  No. 14-cv-9662 (JSR), 2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016) ....................................15

*Plaisance v. Schiller*,
  No. H-17-3741, 2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) ..............................................19

*In re Plug Power, Inc. Sec. Litig.*,
  No. 21 CIV. 2004 (ER), 2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) ................................25

*Querub v. Hong Kong*,
  649 F. App'x 55 (2d Cir. 2016) ..............................................................................10, 11, 15

*Reiger v. Price Waterhouse Coopers LLP*,
  117 F. Supp. 2d 1003 (S.D. Cal. 2000)................................................................................25

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009).................................................................................................22

*In re SAIC Inc. Derivative Litig.*,
  948 F. Supp. 2d 366 (S.D.N.Y. 2013)..................................................................................34

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
  No. 1:12-cv-00993, 2022 WL 3572474 (M.D. Pa. Aug. 18, 2022).......................................15

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs.*,
  No. 1:12-cv-00993, 2015 WL 3833849 (M.D. Pa. June 22, 2015) .......................................18

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ............................................................................21

*Soto v. Disney Severance Pay Plan*,
26 F.4th 114 (2d Cir. 2022) ............................................................................34

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
645 F. App'x 72 (2d Cir. 2016) ................................................................ *passim*

*Special Situations Fund III QP, LP v. Deloitte Touche Tohmatsu CPA, Ltd*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014) ..........................................................22, 29

*Special Situations Fund III QP, LP v. Marrone Bio Innovations, Inc.*,
243 F. Supp. 3d 1109 (S.D.N.Y. 2013) ............................................................15

*Stein v. Tangoe, Inc.*,
No. 3:13-CV-00286 (VLB), 2014 WL 12767210 (D. Conn. Sept. 30, 2014) .........................29

*In re SunEdison, Inc. Sec. Litig.*,
300 F. Supp. 3d 444 (S.D.N.Y. 2018) ......................................................11, 14, 18

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ................................................................................ *passim*

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016) ............................................................................12

*In re Tremont Sec. L., State L. & Ins. Litig.*,
703 F. Supp. 2d 362 (S.D.N.Y. 2010) ................................................................32

*W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
344 F. App'x 717 (2d Cir. 2009) ..................................................................21, 32

*In re Winstar Commc'ns v. Rouhana, Jr.*,
No. 01 CV 11522, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) .............................................8

*In re World Wrestling Ent., Inc. Sec. Litig.*,
180 F. Supp. 3d 157 (D. Conn. 2016) ..............................................................9, 20

*Zech Cap. LLC v. Ernst & Young Hua Ming*,
636 F. App'x 582 (2d Cir. 2016) ............................................................... *passim*

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................................25

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A) ............................................................................20

Defendant Grant Thornton LLP ("Grant Thornton" or "the Firm") moves to dismiss Plaintiff's Amended Complaint, Dkt. 68 (the "Amended Complaint" or "Am. Compl."), with prejudice, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

Independent auditor Grant Thornton is an afterthought in Plaintiff's 254-page Amended Complaint against Compass and its executives. While the Amended Complaint purports to take its readers behind the scenes at Compass and its subsidiary Lugano, it does not allege a single particular fact about what Grant Thornton actually did or did not do during its independent audits of Compass's 2022–24 financial statements and internal control over financial reporting. The Amended Complaint does not allege that Grant Thornton participated in the alleged fraudulent scheme, benefited from it, or even knew about it. Instead, Plaintiff's Section 10(b) claim against Grant Thornton – the only claim asserted against the Firm – wholly relies on impermissible "fraud by hindsight:" speculating that because collusive fraud at Lugano surfaced in 2025 and led to a restatement of Compass's financial statements, Grant Thornton's earlier audit opinions must have been fraudulent. This theory fails as a matter of law for two independently dispositive reasons.

*First*, the Amended Complaint does not plead falsity. The statements in Grant Thornton's audit reports that Plaintiff alleges are false are statements of opinion governed by the stringent requirements the U.S. Supreme Court set forth in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). Under *Omnicare*, to allege that Grant Thornton's audit opinions were false under the federal securities laws, Plaintiff needed to allege "particular (and material) facts" showing that Grant Thornton either: (1) did not hold its opinions when it issued each of the three audit reports at issue (*i.e.*, subjective falsity); (2) issued audit opinions that "embedded statements of fact that are untrue;" or (3) omitted specific, material facts about the auditor's inquiry or knowledge as of the time the opinion was issued that rendered the opinion

1

materially misleading to a reasonable investor. *See Omnicare,* 575 U.S. at 194; *New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 42 (2d Cir. 2023).

The Amended Complaint does not meet any of these requirements. Plaintiff purports to devote dozens of paragraphs of its pleading to Grant Thornton. *See* Am. Compl. ¶¶ 192–266, 431–438. But volume is not substance: many of these paragraphs simply recite summaries of professional standards and Plaintiff's theories on what independent auditors should do *in general*. The few paragraphs that actually address Grant Thornton do not contain any factual allegations demonstrating that Grant Thornton subjectively disbelieved its opinions, nor do they identify any "particular (and material) facts" about Grant Thornton's inquiry or knowledge during the Compass audits. *See Omnicare*, 575 U.S. at 194. Instead, they surmise that Grant Thornton's 2022–24 procedures must have been inadequate, given that Compass uncovered fraud in one of its nine subsidiaries in 2025. Courts have routinely held that allegations like these against independent auditors fall far short of what is necessary to allege falsity under *Omnicare*. *See* Argument § I, *infra*. This failure alone is sufficient to dismiss the claim against Grant Thornton.

***Second***, Plaintiff also fails to state with particularity facts giving rise to a strong inference that Grant Thornton acted with scienter, a necessary element of a claim under Section 10(b) and Rule 10b-5. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). "The standard for scienter is especially demanding" where the defendant is an independent financial statement auditor—it requires the plaintiff to plead particular facts showing a mental state so culpable that it "approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir. 1982); *Zech Cap. LLC v. Ernst & Young Hua Ming*, 636 F. App'x 582, 584 (2d Cir. 2016).

2

The Amended Complaint contains no such factual allegations. Instead, Plaintiff relies entirely on the fact that a fraud was later uncovered to make conclusory, hindsight-based allegations that Grant Thornton should have done more to uncover it. Despite having apparently spoken to over a dozen former Lugano employees, including those charged with financial reporting, Plaintiff does not allege a single fact indicating that Grant Thornton was made aware of the fraud by Lugano's management, much less participated in it.

Even when viewed in the light most favorable to Plaintiff, the scant allegations in the Amended Complaint do not plausibly support the inference that Grant Thornton acted with scienter. And here, the Court must weigh these facts against any "opposing inference of nonfraudulent intent." *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). Based on the Plaintiff's own allegations, the far more "cogent and at least as compelling" inference is that the Lugano subsidiary's senior management and others orchestrated a collusive fraud that involved forged invoices, fabricated documentation, sham transactions, fake shipping labels, and a "complex network of undisclosed counterparties," all designed to "***evade detection by CODI's management and auditors***." Am. Compl. ¶¶ 155, 277 (emphasis added).

After amending its complaint twice, conducting a months-long investigation, and interviewing upwards of a dozen former Lugano employees, Plaintiff still cannot allege that Grant Thornton made any false statements or acted with scienter. Because any further attempts at repleading would be futile, this Court should dismiss the Amended Complaint with prejudice.

## FACTUAL BACKGROUND

For the purposes of this Motion, Grant Thornton treats the factual, nonconclusory allegations in the Amended Complaint as true, though many of them are disputed. On this Motion, the "court[] must consider the complaint," as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322;

3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (explaining that courts may take judicial notice of SEC filings). Grant Thornton does not accept as true—and the Court need not, either—legal conclusions and bare conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

## I.       Compass and Its Subsidiary Lugano

Defendant Compass Diversified Holdings ("Compass") is a publicly-traded private equity firm headquartered in Connecticut. Am. Compl. ¶ 25. Compass is invested in a portfolio of subsidiary companies spanning industries as diverse as industrial magnetics and feminine care. Am. Compl. ¶¶ 25, 28, 58.

In September 2021, Compass obtained a 60% stake in non-party Lugano Diamonds & Jewelry, Inc. ("Lugano"), a "designer, manufacturer, and marketer of one-of-a-kind jewelry" founded in 2004 by CEO Mordechai ("Moti") Ferder. *Id.* ¶¶ 69–70. Compass's portfolio evolved over the years, and as of year-end 2024, Compass held nine subsidiaries including Lugano. *Id.* ¶¶ 28, 87.

## II.      Grant Thornton's Audit Opinions

Grant Thornton serves as Compass's independent financial statement auditor. *Id.* ¶ 192. As the Company's independent auditor, Grant Thornton issued audit reports annually in which it opined on whether Compass's consolidated financial statements were fairly and materially presented in accordance with generally accepted accounting principles ("GAAP") and whether Compass maintained effective internal control over its financial reporting. *Id.* ¶¶ 192, 195, 231.

Grant Thornton issued separate opinions for the fiscal years ended December 31, 2022, 2023, and 2024. In the sections of its Audit Reports titled, "***Opinion* on the financial statements**," Grant Thornton opined that Compass's year-end 2022 through 2024 financial statements were fairly presented in all material respects:

4

> In *our opinion*, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2024 and 2023, and the results of its operations and its cash flows for each of the three years in the period ended December 31, 2024, in conformity with accounting principles generally accepted in the United States of America.

Ex. 3 at F-4 (emphasis added); Am. Compl. ¶ 396; *see also* Ex. 1 at F-4, Ex. 2 at F-3.[1]

The section of Grant Thornton's Audit Reports titled, "***Opinion* on internal control over financial reporting**,' Grant Thornton similarly opined that:

> In *our opinion*, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2024, based on criteria established in the 2013 Internal Control —Integrated Framework issued by COSO.

Ex. 3 at F-2 (emphasis added); Am. Compl. ¶ 401; *see also* Ex. 1 at F-2; Ex. 2 at F-2.

Under the sections of Audit Reports titled, "**Basis for *Opinion***," Grant Thornton further opined, "We conducted our audit in accordance with the standards of the [Public Company Accounting Oversight Board ("PCAOB")]" and *"[w]e believe* that our audits provide a reasonable basis for *our opinion*." Ex. 3 at F-2, F-4 (emphases added); Am. Compl. ¶ 232; *see also* Ex. 1 at F-2, F-4; Ex. 2 at F-2, F-3.

Grant Thornton expressed each of the opinions above with respect to Compass's consolidated financial statements, not specifically on any individual Compass subsidiary, such as Lugano. Am. Compl. ¶¶ 396, 401; *see also* Exhibits 1–3 (2022–24 audit opinions).

---

[1] All exhibits are attached to Defendant Grant Thornton LLP's Motion to Dismiss the Amended Complaint, dated March 23, 2026.  It is well settled that the Court may consider documents in deciding a motion to dismiss "where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). *See also Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (noting that a court may consider "public disclosure documents filed with the SEC" in deciding a motion to dismiss a claim brought under Section 10(b) of the Exchange Act); *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 799 F. Supp. 3d 310, 358 (S.D.N.Y. 2025) (considering a registration statement filed with the SEC in deciding whether a plaintiff had properly alleged the falsity of an audit opinion included in that registration statement on a motion to dismiss).

### III.   Compass's Audit Committee's Investigation and the Company's Restatement

In Spring 2025, after Grant Thornton issued the audit opinions described above, Compass began investigating suspected irregularities in the financial reporting of its subsidiary Lugano. Am. Compl. ¶ 153. On May 7, 2025, Compass publicly disclosed that its ongoing investigation had uncovered "irregularities in Lugano's non-CODI financing, accounting, and inventory practices," including "unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable recorded by Lugano." *Id.* ¶ 267. Compass further disclosed that its 2024 consolidated financial statements should no longer be relied upon in light of "the materiality of the preliminary findings of the investigation." *Id.* ¶¶ 11, 267. Lugano CEO Moti Ferder resigned that same day. *Id.* ¶ 11.

On December 4, 2025, Compass hosted an investor call where it announced the findings of its completed investigation into Lugano, namely that Lugano CEO Moti Ferder orchestrated a years-long campaign of "complex," "undisclosed, and "collus[ive]" fraud, which he "concealed" and "disguised" from outsiders via "forged invoices," and "fake shipping labels," among other methods. Am. Compl. ¶¶ 108, 111, 154–56, 277–78, 282, 291, 294, 299–300, 365.[2] Compass further revealed that Moti *specifically deceived Grant Thornton* by "prepar[ing] false documents and records to . . . *evade detection by CODI's management and auditors*," and presenting "fictitious documents and shipping records . . . to auditors and others as legitimate proof of sales,

---

[2] Throughout the Amended Complaint, Plaintiff incorporates by reference others' characterizations of the collusive fraud at Lugano as its own substantive allegations. *See e.g.,* ¶¶ 13, 276–80 (quoting Compass executives' statements on a December 4, 2025 call and characterizing same as "the full truth"), 155 (quoting Lugano's civil complaint against its former CEO as "corroborat[ing]" its allegations), 156 (quoting a *Forbes* article as "further explain[ing] the deceptive nature of Lugano's investment diamond transactions"), 299–300 (incorporating statements from Compass's December 8, 2025 restatement as "additional revelations" of fact). For purposes of this Motion, the Court must accept these incorporated allegations as true and part of the Amended Complaint. *See Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 117–18 (D. Conn. 2021).

when in fact, they were manufactured to complete the illusion of sales." Am. Compl. ¶¶ 155, 277 (emphasis added).

As a consequence of these findings, Compass restated its 2022, 2023, and 2024 consolidated financial statements on December 8, 2025. Am. Compl. ¶ 9. The restatement did not concern any Compass subsidiaries beyond Lugano. *See id.* ¶¶ 208 – 302.

## IV.    Plaintiff's Pleadings and Claims Against Grant Thornton

On May 12, 2025, former named Plaintiff Nicholas Moreno filed a 32-page securities class action complaint against Compass and its executives, but not Grant Thornton, which is never mentioned in the initial complaint. Dkt. 1. On June 24, 2025, Mr. Moreno later expanded his complaint to 48 pages but again made no reference to Grant Thornton. Dkt. 13.

Eight months later, on February 6, 2026, current named Plaintiff EAS Carpenters filed the operative Amended Complaint, spanning 254 pages and detailing extensive interviews Plaintiff conducted with at least twelve former Lugano employees. Dkt. 68. Critically, despite all this information-gathering, ***not a single statement attributed to the former Lugano employees concerns their interactions with independent auditor Grant Thornton.*** Plaintiff does not contend that any former Lugano employees alerted Grant Thornton to any facts suggesting that collusive fraud was occurring at the Lugano subsidiary. Plaintiff does not contend that any former Lugano employees had any knowledge regarding Grant Thornton's audit procedures. Indeed, Plaintiff does not allege a single fact—not one—about the audit procedures Grant Thornton actually did or did not perform during its audits.

Nevertheless, Plaintiff decided to add Grant Thornton as a defendant under the hindsight-driven theory that, because fraud at the Lugano subsidiary was discovered in 2025, it ought to follow that Grant Thornton "should have" done more and that its year-end 2022 through 2024 audit opinions on Compass's consolidated financial statements must have been fraudulent. Am.

7

Compl. ¶¶ 240–60, 396–402, 431–38.[3] Plaintiff fills page upon page with recitations of professional auditing standards and commentary on what it thinks Grant Thornton "could have" done, "should have done," or "would have" learned during the audits, but never once specifies with particularity what Grant Thornton ***actually did or did not do*** prior to issuing its opinions. *See id.* ¶¶ 193–260.

Plaintiff broadly alleges that each of the five opinion statements in Grant Thornton's year-end 2022, 2023, and 2024 audit reports were fraudulent. Am. Compl. ¶¶ 396. The Amended Complaint never specifies which of these ***fifteen*** cumulative opinion statements was false in which year(s). Nor does it allege any information that might have contemporaneously put Grant Thornton on notice as to the purported incorrectness of its opinions in any given year.

## ARGUMENT

The Amended Complaint fails for two independent reasons. **First**, it does not plead falsity under *Omnicare* because it alleges no facts showing that Grant Thornton disbelieved its audit opinions, embedded false facts in those opinions, or omitted information rendering them misleading. **Second**, it fails to plead scienter under the Private Securities Litigation Reform Act's

---

[3] Plaintiff also seems to accuse Grant Thornton of wrongdoing with respect to Compass's interim, *quarterly* financial statements, Am. Compl. ¶ 403, but does not allege any false statement by Grant Thornton in connection with this interim information. Nor could it. It is well-settled that independent auditors do not provide any assurance or make any statements that are actionable under the federal securities laws regarding quarterly, unaudited financial statements presented in a company's Forms 10-Q. *See In re Winstar Commc'ns v. Rouhana, Jr.*, No. 01 CV 11522, 2006 WL 473885, at *9 (S.D.N.Y. Feb. 27, 2006) ("[w]here a company issues quarterly financial statements which contain a notation that they are unaudited, liability may not be imposed upon a public auditor simply because plaintiffs claim the auditor examined and reviewed the statements"); *see also* AS 4105, Review of Interim Financial Information, at .07 (recognizing that interim reviews do not provide a basis expressing a statement of opinion on a company's financial statements) available at https://pcaobus.org/oversight/standards/auditing-standards/details/AS4105.

8

("PSLRA") and Second Circuit's demanding standard for securities fraud claims against independent auditors.

To plead securities fraud, Plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re World Wrestling Ent., Inc. Sec. Litig.* (hereinafter "*WWE*"), 180 F. Supp. 3d 157, 174–75 (D. Conn. 2016) (Thompson, J.) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)). Plaintiff "must also satisfy the dual heightened pleading requirements of Fed. R. Civ. P. 9(b) and [the PSLRA], which require that the complaint plead both falsity and scienter with particularity." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017). The Amended Complaint fails as a matter of law to sufficiently allege either of the first two elements against Grant Thornton.

## I.    Plaintiff Fails to Allege Facts Establishing Falsity

The sole public statements that Plaintiff attributes to Grant Thornton are statements of *opinion* (Am. Compl. ¶¶ 396, 401), and Plaintiff fails to meet the stringent requirements for alleging that those opinions were false.

In *Omnicare*, the U.S. Supreme Court explained that statements labeled "opinions" or that use words such as "[w]e believe" are, on their face, distinct from factual assertions for purposes of determining liability under the federal securities laws. *Omnicare*, 575 U.S. at 184, 188. This is because such statements "convey some lack of certainty as to the statement's content." *Id.* at 187; *see also New Eng. Carpenters*, 122 F.4th at 39–43 (2d Cir. 2023) ("[Q]ualifying language (like 'I believe' or 'I think') [] conveys a lack of certainty about the thing being expressed [and] marks

9

the statement as reflecting the speaker's impression or point of view rather than an objective truth . . . .").

### A.    The Alleged Misstatements in Grant Thornton's Audit Reports Are Statements of Opinion Under *Omnicare*

The challenged statements by Grant Thornton are identified on their face as opinions. The section of Grant Thornton's audit reports titled "Basis for *Opinion*" states that Grant Thornton's "responsibility" was to "express an *opinion* on the Company's consolidated financial statements" and internal control over financial reporting, and it "*believe[d]*" its "audit provides a reasonable basis for [its] *opinion*." Exs. 1 at F-4, 2 at F-3, 3 at F-4. Grant Thornton's statement concerning Compass's internal control over financial reporting is also plainly an opinion, prefaced by the words, "*our opinion*." *Id.*; Am. Compl. ¶ 401. While the Amended Complaint edits out the key words "in our opinion" when it quotes Grant Thornton's GAAP opinions in paragraph 396, Plaintiff acknowledges throughout its pleading that the statements in Grant Thornton audit reports were opinions and that the issuance of an audit requires the exercise of professional judgment. *Id.* ¶¶ 195, 202, 219, 231–32, 239.

Courts in the Second Circuit and elsewhere have long recognized that reports by independent financial statement auditors express subjective opinions and that *Omnicare* therefore applies. *New Eng. Carpenters*, 122 F.4th at 51–55 (analyzing statement contained in auditor's report as opinion statement under *Omnicare* framework); *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 302 (S.D.N.Y. 2011) ("*Lehman I*") ("[auditor's] statement regarding GAAS compliance inherently was one of opinion"); *accord Querub v. Hong Kong,* 649 F. App'x 55, 58 (2d Cir. 2016) (summary order) ("Audit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard for Section 11 claims."). This includes auditors' assertions that an audit was conducted "in accordance with the

10

standards of the PCAOB" and "provide a reasonable basis for [the auditor's] opinion." *In re Lehman Bros. Sec. & ERISA Litig.*, 131 F. Supp. 3d 241, 248, n. 44 (S.D.N.Y. 2015) ("*Lehman II*") ("[A]n auditor's statement that the auditor conducted an audit in conformity with GAAS cannot properly be characterized as a statement of fact given the general and often inherently subjective nature of the standards that make up significant parts of generally accepted auditing standards[.]"); *see also Buttonwood Tree Value Partners LP v. Sweeney*, 910 F. Supp. 2d 1199, 1208 (C.D. Cal. 2012), *aff'd,* 667 F. App'x 238 (9th Cir. 2016) ("[A]n auditor's GAAS and GAAP assertions are statements of professional judgment and opinion, not verifiable fact."); *Mehedi v. View, Inc.*, No. 21-cv-06374-BLF, 2023 WL 3592098, at \*10 (N.D. Cal. May 22, 2023) ("[S]tatements about PCAOB, GAAS, and GAAP [compliance] do not include any embedded statements of fact.") (collecting cases).

In so holding, these courts recognize the "inherently subjective" nature of designing and performing an audit and the significant degree of judgment necessary to apply GAAP and the professional auditing standards. *See Querub*, 649 F. App'x at 58; *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1542 (LAK), 2019 WL 4257110, at \*15 (S.D.N.Y. Sept. 9, 2019) ("*AmTrust*") (recognizing that GAAP "call[ed] for subjective judgments," even where the company later used the word "error" to describe its original accounting), *aff'd in relevant part by New Eng. Carpenters*, 122 F.4th at 41 (audit reports reflect the auditor's "impression or point of view rather than an objective truth" and cannot be proved false "merely by showing that other reasonable alternative views exist"); *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 499 (S.D.N.Y. 2018) ("*SunEdison*") (noting "the breadth and subjectivity of" auditors' obligations); *Lehman II*, 131 F. Supp. 3d at 248, n. 44.

11

Accordingly, the alleged false statements contained in Grant Thornton's audit reports are not actionable under the federal securities laws unless Plaintiff can satisfy one of the three prongs set forth in *Omnicare* for alleging a false statement of opinion. *See Omnicare*, 575 U.S. at 184, 189. As explained below, Plaintiff does not and cannot do so.

### B.        Plaintiff Fails to Allege A False Statement of Opinion Under *Omnicare*

In *Omnicare*, the U.S. Supreme Court held that an investor cannot plead falsity against a defendant who makes "a sincere statement of pure opinion," even if the "investor can ultimately prove the belief wrong." *Omnicare*, 575 U.S. at 186. Rather, a plaintiff may state a claim for securities fraud based on an opinion statement ***only if***: (1) the speaker subjectively disbelieved the statement—that is, if "the speaker did not hold the belief she professed;" (2) "the statement of opinion contains embedded statements of fact that are untrue;" or (3) the "speaker omits information [that] makes the opinion statement misleading to a reasonable investor." *New Eng. Carpenters*, 122 F.4th at 42 (quoting *Omnicare*, 575 U.S. at 185–86, 194). Alleging falsity under one of these three prongs is "no small task for an investor," *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (quoting *Omnicare*, 575 U.S. at 194), and in the wake of *Omnicare*, courts routinely dismiss securities fraud claims against independent auditors for failure to allege falsity. *See, e.g., Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,* 645 F. App'x 72, 76 (2d Cir. 2016) (affirming dismissal of claims where complaint failed to allege that auditor "lacked a subjective belief . . . that its [audit] opinions were materially misleading"); *Orient Plus Int'l Ltd.*, 799 F. Supp. 3d at 359 ("it is not enough for a plaintiff to surmise that an auditor must not have engaged in a meaningful inquiry because its opinions turned out to be wrong") (cleaned up); *Anvil Tr. v. Ernst & Young*, No. 24-CV-9731 (PKC), 2026 WL 743608, at *9 (S.D.N.Y. Mar. 17, 2026) (dismissing complaint alleging fraudulent audit reports because "these statements of opinions did

12

not contain any implied facts or embedded facts, and the Complaint does not include facts alleging that these opinions were not sincerely held").

Plaintiff does not satisfy any of the three avenues for alleging a misstatement of opinion, and the Court should therefore dismiss the Amended Complaint for failure to state a claim.

1.    The Amended Complaint Does Not Allege that Grant Thornton Subjectively Disbelieved Its Audit Opinions When It Issued Them

To plead subjective falsity, Plaintiff must plead facts demonstrating that Grant Thornton "did not hold" the opinions it expressed in its audit reports. *See New Eng. Carpenters*, 122 F.4th at 42 (quoting *Omnicare*, 575 U.S. at 185–86). It cannot and does not do so.

The Amended Complaint does not allege any facts—let alone particularized and material facts—demonstrating that Grant Thornton disbelieved the opinions in its audit reports. On the contrary, the Amended Complaint describes in vivid detail how Lugano deceived Grant Thornton into believing Compass's 2022–24 financial statements were prepared in accordance with GAAP and its internal controls were effective. *See* Am. Compl. ¶¶ 277 (describing how Lugano's CEO "**prepared false documents and records to . . . evade detection by CODI's management and auditors**," *i.e.*, Grant Thornton), 155 ("**fictitious documents and shipping records were then presented to auditors** and others as legitimate proof of sales, when in fact, they were manufactured to complete the illusion of sales"), 299–300 (explaining the collusive nature of Lugano's fraud).

The Amended Complaint further admits that the Audit Committee investigation that ultimately uncovered the Lugano subsidiary's fraud did not begin "until Spring 2025," *after* Grant Thornton issued the 2022–24 audit opinions.[4] A plaintiff cannot plead subjective falsity where, as

---

[4] *Id.* ¶¶ 153, 311 (the 2022 opinion was signed March 1, 2023), 345 (the 2023 opinion was signed February 28, 2024), 371 (the 2024 opinion was signed February 27, 2025).

13

here, its complaint undermines the notion that the defendant participated in the fraud. *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 595 (S.D.N.Y. 2016) (dismissing Section 10(b) claim where "surrounding circumstances," including company's own conduct, "undermine[d] any [] inference" that "defendants disbelieved their own statements"); *Johnson v. CBD Energy Ltd.*, No. H-15-1668, 2016 WL 3654657, at \*12 (S.D. Tex. July 6, 2016) (dismissing with prejudice securities fraud claim against auditor alleging the auditor discovered the at-issue transactions after the relevant audit). Here, the Amended Complaint itself makes clear not only that Grant Thornton did not participate in the fraud but also that Lugano's management took active steps to "evade" Grant Thornton's detection by feeding it false audit evidence. Am. Compl. ¶ 277.

Without factual allegations demonstrating that Grant Thornton did not subjectively believe the opinions in its audit reports, Plaintiff cannot sustain a cause of action under *Omnicare*'s subjective falsity prong. *See New Eng. Carpenters*, 122 F.4th at 47 (affirming dismissal of Section 11 claims where "the Complaint fail[ed] to adequately allege that the [defendants] . . . did not believe what they certified"); *Special Situations*, 645 F. App'x at 75–76 (affirming dismissal of claim against independent auditor because plaintiff did not allege that auditor "lacked a subjective belief in its opinions"); *SunEdison*, 300 F. Supp. 3d at 499–500 (dismissing complaint, including Section 11 claim, because plaintiffs failed to plead facts "to support a conclusion" that independent auditor "did not honestly hold its stated opinions").

> 2. The Amended Complaint Does Not Allege Materially False "Embedded" Statements of Fact

Nor can Plaintiff proceed under *Omnicare*'s second prong, which applies only where a statement of opinion contains a material embedded "factual and falsifiable" statement. *See Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 175 (2d Cir. 2020); *Omnicare*, 575 U.S. at

185 (providing example of CEO who expresses opinion that his company's televisions are of high quality and supports that opinion with "embedded" fact that the TVs use "patented technology").

The Amended Complaint does not  identify any materially false, embedded statement of fact. Nor can it. Audit reports simply express opinions on the financial statements prepared by a company's management. This is why virtually every court that has addressed the embedded-facts theory of liability in the context of an audit opinion has held that a plaintiff cannot proceed against an auditor under that theory. *See, e.g., CBD*, 2016 WL 3654657, at \*12; *Hunt v. Bloom Energy Corp.*, No. 19-cv-02935-HSG, 2021 WL 4461171, at \*15 (N.D. Cal. Sept. 29, 2021) *aff'd sub nom. Hunt v. PricewaterhouseCoopers LLP,* 159 F.4th 603 (9th Cir. 2025); *Special Situations Fund III QP, LP v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1119 (S.D.N.Y. 2013); *Mehedi.*, 2023 WL 3592098, at \*10–11 (collecting cases); *accord Special Situations*, 645 F. App'x at 75–76 (the only "two ways relevant" to challenging an audit report are under the subjective falsity and omission theories).[5]

3.    The Amended Complaint Does Not Allege a False Statement of Opinion Under a Material Omission Theory

Finally, the Amended Complaint fails to satisfy *Omnicare*'s third prong—omission-theory liability—because it never alleges "particular (and material)" facts demonstrating that Grant

---

[5] Indeed, only one court has ever found that an auditor's report contains embedded facts that are actionable under *Omnicare. See In re Petrobras Sec. Litig.*, No. 14-cv-9662 (JSR), 2016 WL 1533553, at \*4 (S.D.N.Y. Feb. 19, 2016), and that opinion has repeatedly been recognized as wrongly decided. *See CBD*, 2016 WL 3654657, at \*12 (*Petrobras* "misreads" Omnicare's "'embedded statement of fact' concept"); *Hunt*, 2021 WL 4461171, at \*15 (*Petrobras* "misinterpret[ed] . . . *Omnicare*."); *Marrone Bio*, 243 F. Supp. 3d at 1119 (similar); *accord Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 1:12-cv-00993, 2022 WL 3572474, at \*49 (M.D. Pa. Aug. 18, 2022) (financial statements not "embedded" into SOX certifications, which by their "plain language" expressed opinions). The Second Circuit has also since recognized subjective falsity and the omission theory as the "only" paths to showing that an independent auditor's opinion is false. *Querub*, 649 F. App'x at 58.

Thornton omitted from its opinions information that rendered its audit opinions "misleading to an ordinary investor." *See Omnicare*, 575 U.S. at 187, 194.

Pleading falsity under the omission theory is "no small task for an investor," as it requires plaintiffs to allege (a) "particular (and material) facts" that "establish a lack of meaningful inquiry, other than the fact that the [opinion] turned out to be wrong;" and (b) that the defendant "had knowledge of the allegedly omitted information" when it expressed its opinion. *Omnicare,* 575 U.S. at 194; *Orient Plus Int'l Ltd.,* 799 F. Supp. 3d at 359. A plaintiff may not merely express suspicion of an inadequate audit after "[w]orking backwards from the applicable professional standards" – he must instead "plead[] facts regarding the nature, extent, scope, or substance of [the auditor's] inquiry." *Id.* at 359; *see also New Eng. Carpenters*, 122 F.4th at 47 (plaintiff cannot allege merely that an opinion "falsely conveyed the existence of 'some meaningful . . . inquiry,'" without alleging "facts that establish a lack of meaningful inquiry"); *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 717–18 (3d Cir. 2020) (describing benchmark as "rigorous"). It is similarly insufficient for a plaintiff to "just say that the issuer failed to reveal [the] basis" for the opinion at issue or that the auditor was aware of "some fact cutting the other way." *Omnicare*, 575 U.S. at 176, 189–90, 194.

The Amended Complaint comes nowhere close to meeting the high bar for alleging a false opinion under the omission theory. Plaintiff devotes seventy-plus paragraphs to asserting that Grant Thornton "Violated Its Duties." (Am. Compl. ¶¶ 192–266), but those paragraphs contain no facts about Grant Thornton's audit procedures or knowledge. Plaintiff does not allege any facts— much less "particular (and material) facts"—demonstrating that Grant Thornton had information that would "call into question" its "basis for offering" its opinions contemporaneous to issuing those opinions. *Omnicare*, 575 U.S. at 194. Nor does Plaintiff even attempt to allege facts tying

16

any allegedly omitted facts to Grant Thornton's inquiries or explain which factual allegations render which of Grant Thornton's opinions over the three-year period false.

Instead, the sum total of Plaintiff's allegations regarding Grant Thornton consists of (i) identifying Grant Thornton as Compass's independent auditor (Am. Compl. ¶ 192); (ii) expounding generally on its understanding of the role of an independent auditor (*id.* ¶¶ 193–98); (iii) selectively summarizing professional auditing standards governing financial statement audits and opining on how an ideal auditor "would have" conducted its audit (*id.* ¶¶ 200–206, 208–211, 213–17, 219–26, 233–38, 240–41, 243, 245–249, 251–58); and (iv) punctuating these claims with conclusory, speculative allegations that Grant Thornton's 2022–24 audits of Compass's consolidated financial statements must have been deficient because fraud was uncovered at a Compass subsidiary in 2025 (*id.* ¶¶ 199, 207, 212, 218, 227, 239, 242, 244, 250, 259–60, 431–38). Then, Plaintiff goes even further afield by offering a digest of select portions of Grant Thornton's most recent annual PCAOB inspections reports, which issue annually for public accounting firms and which say nothing whatsoever about the audits at issue in this case (*id.* ¶¶ 261–66). All told, Plaintiff refers to things Grant Thornton "could have," "would have," or "should have" done during the Compass audits more than twenty-five times, but never once identifies what Grant Thornton ***actually did*** prior to issuing its opinions.

Courts in the Second Circuit and elsewhere have consistently seen through attempts like this to pair conclusory allegations with language from the professional auditing standards to create a veneer of substance, without alleging any actual facts about the auditor's inquiry, knowledge, or procedures. *See Special Situations*, 645 F. App'x at 76 (plaintiff failed to "adequately state" a claim under the omission theory where it alleged that auditor omitted to disclose its performance of a "deficient audit investigation" and "knew of numerous facts that outright contradicted [its]

17

opinions"); *SunEdison*, 300 F. Supp. 3d at 500 (dismissing claim for failure to plead falsity where claim was premised on allegations that auditor violated standards governing audit evidence and the exercise of due professional care because the complaint did not "include facts" and instead "merely reverse-engineer[ed]" the company's corrective disclosures and sought "to apply them to unrelated statements contained in the Audit Report"); *see also Hunt*, 2021 WL 4461171, at *5–6 (no falsity where complaint's "conclusory" allegations about defendants' knowledge failed to "address what 'inquiry' [d]efendants did or did not make with respect to" defendant's "GAAP compliance" and what "purported knowledge . . . should have been accounted for differently under GAAP"); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs.*, No. 1:12-cv-00993, 2015 WL 3833849, at *34 (M.D. Pa. June 22, 2015) (dismissing claim that auditor "miss[ed]" "red flags" and "should have known" about fraud where those allegations were "based on hindsight"); *City of Warwick Ret. Sys. v. Carvana Co.*, CV 2022-013054, slip op. at 27 (Ariz. Sup. Ct. Oct. 26, 2023) (attached as Exhibit 4) (no falsity where complaint alleged that audit failed to comply with certain auditing standards but made "no effort to connect the [auditing] standards to material facts about [the defendant's] audit").

Courts reject claims like Plaintiff's with good reason—if boilerplate recitation of auditing requirements together with conclusory, hindsight-laden claims about what an auditor "could have" (Am. Compl. ¶¶ 199, 259) or "should have" (*id.* ¶¶ 218, 220, 226, 241, 245, 252) done were sufficient to state a claim, *Omnicare*'s opinion-liability standard would effectively be dead letter. This is because any plaintiff could repurpose a company's subsequent corrective disclosures and the language in the auditing standards into a conclusory theory that the auditor should have done more.

18

Plaintiff's suggestion that Grant Thornton knew and omitted material information is further belied by detailed allegations elsewhere in the Amended Complaint demonstrating that Lugano's management undertook an elaborate, collusive fraud—"forged invoices," "fake shipping labels," and "complex network of undisclosed counterparties"—with the goal to "evade detection by CODI's management *and auditors*." Am. Compl. ¶¶ 108, 111, 155, 277. Grant Thronton could not omit information that it did not know, and without any particular factual allegations of procedures that Grant Thornton omitted, Lugano's complex scheme designed to "evade" detection by Grant Thornton and others undermines liability under an omission theory. *See In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 645–46 (2d Cir. 2015) (dismissing claim against auditor for "failure to spot" fraud where allegations indicated that the company "maintained two sets of data … and fed [auditor] false data to complete its audits"); *Plaisance v. Schiller*, No. H-17-3741, 2019 WL 1205628, at *11–13 (S.D. Tex. Mar. 14, 2019) (plaintiffs failed to allege omissions-based falsity where they alleged auditor "knew or should have known" about "red flags" but pleading "contradict[orily]" made clear that alleged "red flags" were undisclosed).

At bottom, the Amended Complaint assumes that because fraud at the Lugano subsidiary surfaced in 2025, Grant Thornton's earlier audits of Compass's financial statements must have been fraudulent. ¶¶ 398–400, 402. But "[w]orking backward from the applicable professional standards" and "surmis[ing] that an auditor must not have engaged in a meaningful inquiry because its opinions turned out to be wrong" is not enough to state a claim. *See Orient Plus Int'l*, 799 F. Supp. 3d at 359 (internal quotation omitted). Instead, a Plaintiff "must allege … facts that establish a lack of meaningful inquiry, other than the fact that the [opinion] turned out to be wrong." *Id* (internal quotation omitted).

*    *    *

19

The Amended Complaint does not allege that Grant Thornton's audit opinions were actionable false statements under *Omnicare*. Count I therefore fails as a matter of law as to Grant Thornton and should be dismissed.

## II.    Plaintiff Fails to Plead Facts Establishing Scienter

Count I also fails because the Amended Complaint does not plead facts supporting a strong inference that Grant Thornton acted with scienter. Instead, the Amended Complaint relies upon classic "fraud-by-hindsight" pleading, which cannot form a basis for relief and is far less compelling than the contrary inference that Lugano's management colluded to conceal its fraud from Grant Thornton.

"[A]llegations of securities fraud pled under § 10(b) of the Exchange Act and Rule 10b–5 are subject to the [heightened] pleading requirements of Federal Rule of Civil Procedure Rule 9(b)." *WWE*, 180 F. Supp. 3d at 173. The PSLRA requires plaintiffs alleging securities fraud to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *i.e.,* "an intent to deceive, manipulate or defraud." *Id.* at 174 (quoting 15 U.S.C. § 78u–4(b)(2), *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 168 (2d Cir.2000)); 15 U.S.C. § 78u-4(b)(2)(A). A plaintiff may establish scienter "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Critically, "recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence." *Advanced Battery Techs*, 781 F.3d at 644 (internal citations omitted).

The standard for pleading scienter against an independent auditor is "especially demanding." *Zech*, 636 F. App'x, at 584. In order to do so, a plaintiff must "**allege with particularity conduct [by the auditor] approximating an actual intent to aid in the fraud**

20

**being perpetrated by the audited company**." *Id.* (cleaned up) (emphasis added) (citing *Advanced Battery Techs.*, 781 F.3d at 644). "[M]ere allegations of a shoddy audit in violation of GAAS do not establish the necessary intent." *DeLollis v. Friedberg, Smith & Co., P.C.*, 933 F. Supp. 2d 354, 365 (D. Conn. 2013), *aff'd*, 600 F. App'x 792 (2d Cir. 2015) (internal quotation omitted); *see also Anvil Trust*, 2026 WL 743608 at *13 (dismissing complaint where auditor "may have failed to identify fraudulent conduct within the company, but the Complaint does not allege facts consistent with a reckless or knowingly fraudulent intent in conducting the audit") (internal quotation omitted); *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 387, 390 (9th Cir. 2002) (even "a seriously botched audit" amounting to gross negligence is insufficient to establish scienter); *accord W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717, 720 (2d Cir. 2009) ("failing to identify problems with internal controls does not establish reckless behavior under Section 10(b)"). In other words, in a case against an auditor, "[t]he issue [] is not the sufficiency of [the defendant's] audit, but its intent in conducting the audit." *Zech*, 636 F. App'x at 585.

The Second Circuit has repeatedly rejected efforts by plaintiffs to rely on the formula of pleading "fraud by hindsight," *i.e.*, "seiz[ing] upon disclosures made in later [] reports and alleg[ing] that they should have been made in earlier ones." *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (merely "coup[ling]" a factual statement with a conclusory allegation of fraudulent intent is "meaningless" and cannot satisfy the PSLRA's particularity requirements); *Bonine v. Guccione*, No. 21-955, 2022 WL 102073, at *2 (2d Cir. Jan. 11, 2022) (summary order) (similar). Instead, a plaintiff must allege ***particular***, contemporaneous ***facts*** showing "accounting practices so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable

21

accountant would have made the same decisions if confronted with the same facts." *Special Situations Fund III QP, LP v. Deloitte Touche Tohmatsu CPA, Ltd*, 33 F. Supp. 3d 401, 426–27. (S.D.N.Y. 2014) (cleaned up).

Furthermore, whether a complaint gives rise to a strong inference of scienter is not "decided in a vacuum." *Tellabs*, 551 U.S. at 323–24. Under the U.S. Supreme Court's decision in *Tellabs*, the court in a securities fraud case must weigh competing inferences in evaluating whether dismissal is proper and specifically "must consider plausible, nonculpable explanations for the defendant's conduct." *Id.* at 324. Here, for Plaintiff's claim to survive the *Tellabs* test, the inference that Grant Thornton engaged in fraud "must be more than merely plausible or reasonable—it must be ***cogent and at least as compelling*** as any opposing inference of nonfraudulent intent." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 111 (2d Cir. 2009) (citing *Tellabs*, 551 U.S. at 324) (emphasis added).

The Amended Complaint does not come close to meeting this bar, and it utterly fails the *Tellabs* test. The Amended Complaint never once accuses Grant Thornton of being motivated to defraud Compass's investors, and nor could it: Plaintiff does not contend that Grant Thornton received anything of value from Compass apart from routine audit fees for its services, and "generalized economic interest in professional fees is insufficient to establish an accounting firm's motive to commit fraud." *In re DNTW Chartered Accts. Sec. Litig.*, 96 F. Supp. 3d 155, 164 (S.D.N.Y. 2015) (internal citation omitted).

As such, Plaintiff's "Scienter Allegations Against Defendant Grant Thornton" are thus premised solely upon a theory of recklessness. Am. Compl. ¶¶ 431–38. But this theory is altogether unsupported by the required "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Rather than pleading particularized facts supporting an

22

inference of scienter, Plaintiff pleads **no facts at all** about how Grant Thornton conducted its audits. Instead, Plaintiff first points to the subsequent restatement Compass's consolidated financial statements and impermissibly speculates that Grant Thornton must have knowingly or recklessly disregarded certain PCAOB standards because it otherwise "would have" detected "red flags" of Lugano's fraud. *Id.* ¶¶ 432–35. Plaintiff then posits that the findings of the PCAOB's annual inspection program regarding *other* unidentified Grant Thornton audits constitute a form of propensity evidence that the Firm probably violated professional standards while auditing Compass's financial statements. *Id.* ¶¶ 436–37.

Individually and collectively, these fact-free theories fail to meet the high standard for pleading the requisite recklessness or conscious misconduct by an auditor.

### A.     Plaintiff's Hindsight-based Allegations of Missed "Red Flags" Fail to Establish Scienter as a Matter of Law

Plaintiff's first theory of scienter against Grant Thornton is not grounded in contemporaneous facts about the audits themselves. Instead, the Amended Complaint relies almost entirely on impermissible "fraud by hindsight"—starting from the premise that Compass restated its financials in 2025 after uncovering collusive fraud in one of its nine subsidiaries (Lugano), then working backwards to assert that Grant Thornton "should have" done more and must have conducted reckless audits of Compass's consolidated financial statements for 2022, 2023, and 2024. Consider, for example, paragraph 242:

> If GT had adhered to PCAOB Standards, GT would have conducted interviews of Lugano accounting and other personnel, interviewed Moti, made site visit(s) to Lugano, reviewed documentation and financial reporting of large sales transactions, and tested Lugano's accounting processes to gather sufficient audit evidence. Either GT performed all of these procedures and avoided or recklessly disregarded the obvious errors in the accounting and reporting of revenue and liabilities, or it did not perform the necessary audit procedures to properly test the material accuracy of the reported financials.

23

This speculative conclusion is wholly devoid of particularized facts, and it is representative of the Amended Complaint's overall approach to Grant Thornton. The entire section of the Amended Complaint regarding Grant Thornton follows a repetitive formula—Plaintiff devotes dozens of paragraphs purporting to explain concepts such as professional skepticism and various auditing requirements[6] (*e.g.*, Am. Compl. ¶¶ 193–198, 200–203, 213–217, 228–238), and then culminates by formulaically opining with hindsight on the sufficiency of Grant Thornton's audits. *See, e.g., id.* ¶¶ 199, 204, 218, 240–245, 254–260) (opining that Grant Thornton "could have" or "should have" done more and hypothesizing that it "would have" led to the discovery of Lugano's complex, collusive fraud). Plaintiff's purported "Scienter Allegations Against Grant Thornton"— which span a total of seven paragraphs, are similarly devoid of facts and instead comprise of a string of statements about procedures auditors "should" perform and speculation of what such procedures "would have" identified based on the later uncovered fraud and restatement. Am. Compl. ¶¶ 431–438.

It is well-settled that such "fraud by hindsight" allegations— attempts to use later outcomes to infer that the earlier process of conducting the audit must have been lacking—fail as a matter of law. *See In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 377 (S.D.N.Y. 2011) ("Merely

---

[6] Although unnecessary, the Court may take judicial notice that many of Plaintiff's characterizations of the auditor's responsibilities are flatly inconsistent with the PCAOB's auditing standards themselves. Auditors do not serve as a "double check on the managers" or "verify" or "vouch for the accuracy" of the company's financial statements. *See* Am. Compl. ¶¶ 196, 250. Rather, they perform certain procedures – including sample testing, inquiries, and analytical procedures – to reach **opinions** that provide **reasonable** (not absolute) assurance over whether *consolidated* financial statements (i.e., Compass's financial statements, including all of its subsidiaries) were free of **material** misstatement. *See* PCAOB Auditing Standard ("AS") 1000, General Responsibilities of the Auditor in Conducting an Audit, at .03; available at https://pcaobus.org/oversight/standards/auditing-standards/details/as-1000--general-responsibilities-of-the-auditor-in-conducting-an-audit, AS 2305, Substantive Analytical Procedures; AS 2315, *Audit Sampling,* available at https://pcaobus.org/oversight/standards/auditing-standards/details/AS2305.

alleging that [an auditor] "would" or "could" or even "should" have known of [a company's] fraud if only it had paid attention to the "red flags" is insufficient to make out a 10(b) claim"); *Diabat v. Credit Suisse Grp. AG*, 23-cv-5874 (CM), 2024 WL 4252502, at *164 (S.D.N.Y. Sept. 19, 2024) (plaintiff failed to plead scienter where he merely "assume[d]" that "because" auditor "failed to catch the [] problems," auditor was liable); *Special Situations Fund III,* 645 F. App'x at 75 ("It is only with the benefit of hindsight that these records can be characterized as red flags, but allegations of 'fraud by hindsight' are insufficient"); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) ("[T]he mere publication of a restatement is not enough to create a strong inference of scienter."); *Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1012–13 (S.D. Cal. 2000) (dismissing Section 10(b) claim against auditor where plaintiff did not allege facts suggesting auditor had "actual awareness of [] revenue improprieties" but instead relied on a "blend" of "hindsight, speculation and conjecture to forge a tenuous chain of inference" about how various "warning signs must have made the fraud obvious and conspicuous"). Nor are allegations regarding the magnitude of Compass's restatement sufficient to support a strong inference of scienter. *In re Plug Power, Inc. Sec. Litig.*, No. 21 CIV. 2004 (ER), 2022 WL 4631892, at *17 (S.D.N.Y. Sept. 29, 2022) ("the magnitude of the restatement, standing alone, does not raise an inference of scienter").

Plaintiff's reliance on the discredited theory that the later identified issues at the Lugano subsidiary support the inference that Grant Thornton performed its audits with fraudulent intent is also inconsistent with professional auditing standards. Among the professional standards Plaintiff discusses in the Amended Complaint is PCAOB Audit Standard 2401 ("AS 2401").[7] *See id.* ¶ 213.

---

[7] AS 2401: *Consideration of Fraud in a Financial Statement Audit*, available at
https://pcaobus.org/oversight/standards/auditing-standards/details/AS2401

That same standard underscores the challenges auditors face in identifying the precise type of fraud that occurred at Lugano:

> Fraud may be concealed by withholding evidence or misrepresenting information in response to inquiries or by **falsifying documentation**. For example, management that engages in fraudulent financial reporting might **alter shipping documents**. Employees or members of management who misappropriate cash might try to conceal their thefts by **forging signatures** or falsifying electronic approvals on disbursement authorizations. **An audit conducted in accordance with the standards of the PCAOB rarely involves the authentication of such documentation, nor are auditors trained as or expected to be experts in such authentication**. In addition, an auditor **may not discover the existence of a modification of documentation through a side agreement that management or a third party has not disclosed**.

AS 2401, at .09 (emphases added); *see also id.* at .10 (fraud "may be concealed through collusion among management, employees, or third parties"). For this reason, the Audit Standard recognizes that "**collusion may cause the auditor who has properly performed the audit to conclude that evidence provided is persuasive when it is, in fact, false**." *Id.* at .10; *compare with* Am. Compl. ¶¶ 155, 294 (alleging that Lugano's CEO colluded with others at the company, entered into agreements with undisclosed counterparties, and concealed the fraud by forging invoices and falsifying shipping documents). Put differently, Plaintiff's own allegations show that *the fraud at Lugano bears virtually every hallmark the professional auditing standards recognize as being particularly difficult to detect as the external independent auditor*.

What is wholly missing from the Amended Complaint are the requisite particular, factual allegations regarding Grant Thornton's audits that would demonstrate its conduct "approximate[d] an actual intent to aid in the fraud being perpetrated by the audited company." *Zech*, 636 F. App'x at 585. Despite its apparently extensive research and interviews with over a dozen confidential witnesses, Plaintiff's 479-paragraph Amended Complaint comes up utterly empty of factual allegations about what Grant Thornton *actually did or did not do* during its audits of Compass's consolidated financial statements. Even Plaintiff's allegations sourced from those supposedly

involved with the Lugano subsidiary's financial reporting say nothing whatsoever about Grant Thornton procedures, much less that the Firm was aware of any financial impropriety. *See* Am. Compl. ¶¶ 56, 143, 148, 154–155, 163–67, 190, 259, 415–418.

Because Plaintiff has not asserted any particular factual allegations about Grant Thornton's audits demonstrating that the audits were performed with such extreme recklessness as approximating an "actual intent to aid in [Lugano's] fraud," the Amended Complaint fails as a matter of law to allege scienter under a recklessness theory. *See Zech*, 636 F. App'x at 585.

**B.      Reference to the PCAOB's Annual Inspection Findings Do Not Support an Inference of Recklessness or Conscious Misconduct in the Compass Audits.**

Plaintiff attempts to bolster its claims by citing the PCAOB's annual reports of inspection findings about Grant Thornton's audit practice ***in general***, claiming in essence that the reports constitute a form of propensity evidence of recklessness during the Compass audits, *see* Am. Compl. ¶¶ 261–265, 436–37. Such allegations do nothing to advance Plaintiff's claims because they mischaracterize both the PCAOB inspection program and the inspection reports, and because they are insufficient as a matter of law in any event.

As an initial matter, Plaintiff's allegations regarding the PCAOB's 2023 and 2024 inspections add nothing meaningful to Plaintiff's pleading because they do not relate in any way to Grant Thornton's audit of Compass's consolidated financial statements or the Lugano subsidiary. Plaintiff does not allege that the PCAOB inspected the Compass audits, reviewed any audit work related to Lugano, or made any findings concerning Grant Thornton's work on the relevant audits. Instead, Plaintiff simply (a) cites high-level statistics about inspection "deficiency rates" and quotes examples of audit issues that the PCAOB identified based on its review of a sample of *other* unnamed engagements (*see* Am. Compl. ¶ 261); and (b) relies on broad statements

27

that the PCAOB found deficiencies that could apply to any audit in any industry, *see id.* ¶¶ 262–265.

This generalized reliance on PCAOB inspections is misplaced and is legally insufficient to state a claim. The PCAOB periodically inspects all public-company auditors and publishes summary reports. The existence of inspection findings is neither unusual nor indicative of misconduct in any particular engagement—much less the engagements here. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 154 (S.D.N.Y. 2021) ("we do not find that the PCAOB Reports . . . support an inference of scienter" including because "Inspection Reports do not refer to issuers by name").  For example, the PCAOB found a "Part 1.A deficiency" in 46% of all audit engagements it inspected in 2023. Yet no one could reasonably suggest that these results raise a strong inference that all of those firms with inspection findings must be engaged in fraud concerning the inspected audits, much less *other* audits as well.

Furthermore, even putting aside Plaintiff's attempted misuse of the inspection reports to make inferences regarding specific audits, the reports themselves in no way support Plaintiff's contention that there was a pattern of reckless auditing in Grant Thornton's ranks. Instead, the PCAOB reports conclude that, among the fifty-five Grant Thornton audits examined, ***none*** reached an "incorrect opinion on the financial statements and/or [internal controls]."[8] Furthermore, **neither PCAOB Report contains any reference to recklessness or conscious misconduct by Grant Thornton.** While the PCAOB identified deficiencies in certain anonymized audits, it stressed on

---

[8] PCAOB, 2024 Inspection Grant Thornton LLP, PCAOB Release No. 104-2025-038 (Feb. 26, 2025) at 18, available at https://assets.pcaobus.org/pcaob-dev/docs/default-source/inspections/documents/104-2025-038-gt.pdf?sfvrsn=70da1b77_2; PCAOB, 2023 Inspection Grant Thornton LLP, PCAOB Release No. 104-2024-084 (May 23, 2024) at 18, available at https://assets.pcaobus.org/pcaob-dev/docs/default-source/inspections/reports/documents/104-2024-084-gt.pdf?sfvrsn=f4fa1c55_2.

the first page of both reports that such findings (1) "do[] not necessarily mean that the issuer's financial statements are materially misstated or that undisclosed material weaknesses in [internal controls] exist;" (2) "do not necessarily mean that the Board has concluded the firm was not objective and impartial throughout the audit and professional engagement period;" and (3) "do[] not necessarily mean that the firm has not addressed the deficiency."

Finally, Plaintiff's attempt to use the inspection reports also fails as a matter of law. Even if Plaintiff could tie these anonymized deficiencies to the Compass audits (which it cannot), it would not move the needle on scienter because "mere allegations of a shoddy audit in violation of GAAS do not establish the necessary intent." *DeLollis*, 933 F. Supp. 2d at 365 (internal quotations omitted); *DSAM*, 288 F.3d at 387, 390 (even "a seriously botched audit" is insufficient to establish scienter). Nothing in the inspection reports supports the inference that the procedures Grant Thornton performed in its 2022, 2023, and 2024 audits of Compass's financial statements and internal control over financial reporting were "so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *See Special Situations Fund*, 33 F. Supp. 3d at 426–27.

Moreover, PCAOB inspection reports which do not refer to an issuer by name do not "support an inference of scienter" with respect to that issuer. *Aegean Marine Petroleum*, 529 F. Supp. 3d at 154; *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 595 F. Supp. 2d 1253, 1285 (M.D. Fla. 2009), aff'd, 594 F.3d 783 (11th Cir. 2010) ("[t]he PCAOB report fails to support a strong inference that KPMG acted with scienter"); *accord Stein v. Tangoe, Inc.*, No. 3:13-CV-00286 (VLB), 2014 WL 12767210, at *20 (D. Conn. Sept. 30, 2014) (plaintiffs failed to plead

scienter in 10(b) case where complaint impermissibly "attempt[ed] to use prior bad acts as circumstantial evidence to show that the Defendants consciously 'misbehaved'") (citing Fed. R. Evid. 404(b), *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991)).

These inspection reports provide no basis to infer scienter in the Compass audits. Plaintiff therefore fails to plead scienter, and Count I fails as a matter of law.

> **C.      The Court Should Reject Plaintiff's Theory of Scienter Under *Tellabs* Because It Is Less Compelling than the Alternative Inference that Lugano's Management Deceived Grant Thornton.**

Not only do Plaintiff's allegations fail to show scienter, but the Amended Complaint also fails to state a claim under *Tellabs* because the alternative inference that Grant Thornton was deceived by a complex fraudulent scheme executed by Lugano insiders is far more compelling than—and certainly "at least as compelling" as—any inference that Grant Thornton issued clean audit opinions on Compass's consolidated financial statements with an intent to defraud investors. *Tellabs*, 551 U.S. at 324.

Under *Tellabs* and the PSLRA, the Court must weigh competing inferences when evaluating the sufficiency of a securities fraud claim. *Tellabs*, 551 U.S. at 324. Specifically, the Court must weigh any competing narratives presented in a plaintiff's pleading and determine whether the culpable narrative is "cogent and at least as compelling as any opposing inference one could draw from the facts" after considering "plausible, nonculpable explanations for the defendant's conduct." *Id*.

Plaintiff's own allegations provide a nonculpable and far more compelling explanation for Grant Thornton's audit opinions on Compass's financial statements: Grant Thornton performed good faith, independent audits, but Lugano's management actively deceived Grant Thornton (and many others) through a complex, collusive scheme to defraud. Plaintiff's own allegations make clear that insiders at the Lugano subsidiary undertook a years-long campaign of "complex,"

"undisclosed, and "collus[ive]" fraud, which they "concealed" and "disguised" from outsiders via "forged invoices," and "fake shipping labels," among other methods. Am. Compl. ¶¶ 108, 111, 154–56, 277–78, 282, 291, 294, 299–300, 365. Moreover, Lugano insiders **specifically deceived Grant Thornton** by "prepar[ing] false documents and records to . . . evade detection by CODI's management **and auditors**," and presenting "fictitious documents and shipping records . . . **to auditors** and others as legitimate proof of sales, when in fact, they were manufactured to complete the illusion of sales." Am. Compl. ¶¶ 155, 277. The investigation which ultimately uncovered Lugano's frauds did not begin "until Spring 2025," *after* Grant Thornton issued the last (2024) audit opinion at issue in this action. Am. Compl. ¶¶ ¶¶ 153, 311, 345, 371.

Compared to this fact-supported nonculpable explanation, Plaintiff's theory of Grant Thornton's purported scienter is neither plausible nor "cogent," and it fails as a matter of law under the *Tellabs* test. Indeed, absent particular factual allegations to the contrary, courts in the Second Circuit consistently reject the notion that a global accounting firm would risk its reputation to help perpetrate a fraud on behalf of a single audit client:

> Auditing firms . . . are compensated by public companies . . . for providing opinions that are both expert and objective, and their financial success is at least partly a function of their reputation for honesty and accuracy. While they will ordinarily seek to stay in the good graces of a powerful client with strong connections, they have an at least equally strong motive to maintain their professional reputation, as it is **economically irrational to risk their professional reputation, license, and the possibility of legal liability simply in return for a professional services fee**."

*Diabat*, 2024 WL 4252502, at *158 (cleaned up) (emphasis added); *see also Duncan v. Pencer*, No. 94 CIV. 0321(LAP), 1996 WL 19043, at *10 (S.D.N.Y. Jan. 18, 1996) (dismissing as "highly unlikely and counter-intuitive" the contention that an independent auditor would "knowingly condone a client's fraud in order to preserve a fee that, at best, is an infinitesimal percentage of its annual revenues and, by doing so, jeopardize its reputation and license, as well as subject itself to

31

potential damages literally tens of thousands of times as large as its fee and subject the partner involved to potential professional and financial extinction"); *DNTW*, 96 F. Supp. 3d at 165 ("no independent auditor would risk ruination of its reputation for the fees it would collect in order to suppress fraud. . . . [I]t strains reason that [an auditor] would jeopardize its reputation, subject itself to civil and/or criminal liability, and risk substantial financial penalties simply because it wanted to keep . . . a client") (internal quotations omitted).

Accordingly, in circumstances such as these, where a company "fed [its auditor] false facts to complete its audits," courts routinely consider the nonculpable inference "more compelling" than the alternative speculation that an auditor's "failure to spot the discrepancies was reckless." *Advanced Battery Techs*, 781 F.3d at 645–46 (declining to infer recklessness based on auditor's alleged failure to identify fraud, finding that the "more compelling inference" was that the company "fed [auditor] false data to complete its audits"); *see also W. Va. Inv. Mgmt. Bd*, 344 F. App'x at 721 ("plaintiffs' allegations that [audit client] consciously and continually attempted to override [internal] controls undermines any inference of [auditor's] recklessness . . . "the competing inference that [auditor] was deceived is stronger than the inference they were reckless"); *In re Tremont Sec. L., State L. & Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010) ("[r]ather than plaintiffs' proposed inference that the Auditors did not comply with GAAS because they ignored 'red flag' warnings and failed to uncover the Ponzi scheme, the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and eluding the SEC and other financial professionals"); *Athale v. SinoTech Energy Ltd.*, No. 11-cv-5831 (AJN), 2015 WL 13145808, at *8 (S.D.N.Y. Jan. 23, 2015) (dismissing case where "more compelling inference" was that auditor "failed to discover or

disclose the fraud not because of its own recklessness, but because great lengths were taken to conceal the fraud").

There is no question that the inference that Grant Thornton was deceived by the fraud—not a part of it—is "cogent and at least as compelling" as Plaintiff's theory that Grant Thornton decided to imperil its reputation by knowingly or recklessly performing shoddy audits and then lying to investors about the results, all despite having no financial incentive to do so. *See* Am. Compl. ¶¶ 431–38. This is particularly clear from the lack of any particular allegations in the Amended Complaint regarding Grant Thornton's conduct as compared to the detailed allegations concerning Lugano's collusive fraud aimed directly at deceiving Grant Thornton. The Amended Complaint contains nothing more than fact-free speculation that Grant Thornton "must have" knowingly or recklessly conducted noncompliant audits because it did not detect fraud in the Lugano subsidiary during the 2022–24 audits of Compass's consolidated financial statements. *See* Argument § II, *supra*. Not only does this theory fail as a matter of law, it is wholly undermined by the more plausible nonculpable explanation. *In re DNTW Chartered Accountants Sec. Litig.*, 96 F. Supp. 3d at 168–69 (lack of scienter where management disguised the company's fraud from the auditor); *see also Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*, 973 F. Supp. 2d 459, 466 (S.D.N.Y. 2013) (auditor lacked scienter where company actively concealed fraud from auditor).

The Amended Complaint's theory of scienter is therefore not cogent. And the Amended Complaint's fact-supported, nonculpable explanation for how Grant Thornton reached its opinions is "cogent and at least as compelling"—if not far more compelling—than Plaintiff's speculative and economically irrational allegations against Grant Thornton. Accordingly, the Amended Complaint fails to allege scienter under *Tellabs* and therefore fails to state a claim. *Tellabs*, 551 U.S. at 324.

**III.     The Court Should Dismiss the Amended Complaint with Prejudice**

Plaintiff has had a full opportunity to marshal its best case. The Amended Complaint spans more than 250 pages and is the product of what Plaintiff frames as an extensive pre-filing investigation, including the review of public filings and purported interviews with at least a dozen confidential former employees—including employees who allegedly worked in the accounting function and were responsible for the Lugano subsidiary's financial reporting. *See* Am. Compl. ¶¶ 48, 50, 56. Yet, despite its seemingly sweeping investigation, Plaintiff cannot muster any particularized facts showing that Grant Thornton's 2022, 2023 or 2024 opinions were false or that the Firm acted with the requisite level of scienter necessary to sustain a securities fraud claim against an independent auditor.

Where, as here, a plaintiff has already amended its complaint after conducting a substantial investigation and presented a lengthy, detailed pleading but still cannot come close to pleading a viable claim, courts routinely conclude that further amendment would be futile. *See e.g., Friedman v. Self Help Cmty. Servs.,* No. 11-CV-3210 NGG JMA, 2015 WL 1246538, at *6 (E.D.N.Y. Mar. 17, 2015)*, aff'd sub nom. Friedman v. Self Help Cmty. Servs., Inc*., 647 F. App'x 44 (2d Cir. 2016) (denying leave to amend as futile where "Plaintiff has already amended the Complaint several times, and has had ample opportunity to defend the lengthy allegations contained in the Revised Second Amended Complaint"); *In re SAIC Inc. Derivative Litig*., 948 F. Supp. 2d 366, 391 (S.D.N.Y. 2013), *aff'd sub nom. Welch v. Havenstein*, 553 F. App'x 54 (2d Cir. 2014) ("granting leave to amend the Complaint is inappropriate on grounds of futility" where "Plaintiffs filed a lengthy and detailed complaint"); *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 125 (2d Cir. 2022) ("[i]n light of Soto's previous opportunities to amend her pleading and the bases for our decision, permitting further amendment of the Complaint would be futile").

Accordingly, the Court should dismiss Plaintiff's claim against Grant Thornton with prejudice and without leave to replead.

## CONCLUSION

For the foregoing reasons, Defendant Grant Thornton respectfully requests that the Court dismiss Count I of the Amended Complaint as alleged against Grant Thornton with prejudice.


Dated:  March 23, 2026
        Hartford, Connecticut

Respectfully submitted,

GRANT THORNTON, LLP

/s/ *Thomas J. Finn*
Thomas J. Finn (ct20929)
Paula Cruz Cedillo (ct23485)
Snigdha Mamillapalli (ct31142)
**McCARTER & ENGLISH, LLP**
185 Asylum Street, 36th Floor
Hartford, CT 06103
Tel.: (860) 275-6700
Fax: (860) 724-3397
tfinn@mccarter.com
pcedillo@mccarter.com
smamillapalli@mccarter.com

-and-

Karim Basaria (admitted *pro hac vice*)
Bruce R. Braun (admitted *pro hac vice*)
Tommy Hoyt (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
1 S Dearborn Street,
Chicago, IL 60603
Tel.: (312) 853-7000
Fax: (212) 853-7036
kbasaria@sidley.com
bbraun@sidley.com
thoyt@sidley.com

*Attorneys for Grant Thornton LLP*

35

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated below. Parties may access this filing through the Court's CM/ECF System.


By:     */s/ Thomas J. Finn*
       Thomas J. Finn (ct20929)